**STATE of Missouri, Respondent,**

v.

**Dennis McALISTER, Appellant.**

No. 59719.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 17, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 20, 1992.

Application to Transfer Denied
June 2, 1992.

James J. Knappenberger, Clayton, for appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Appeal from jury convictions for possession of heroin and possession of cocaine. And, appeal from jury convictions of two Class B misdemeanors: possession with the intent to use drug paraphernalia, eighty-four empty capsules; and possession with intent to use drug paraphernalia, a Raid aerosol can modified to open from the bottom. Defendant was sentenced as a prior offender to terms of five years' imprisonment on each of the felonies and terms of six months' imprisonment on each of the misdemeanor convictions, all of which were to be served concurrently. We affirm.

On January 4, 1989, Detectives Portell and Morici were working undercover in the City of St. Louis, Missouri. At approximately 10:30 p.m., they received information regarding suspicious activities involving a Buick which was parked at the intersection of Plymouth and Hamilton Streets. They drove to the area in an unmarked police car and conducted a surveillance of the Buick station-wagon for approximately half an hour. During that time, they observed approximately fourteen people come up to the car at different times, some approaching the driver's side and some approaching the passenger side of the vehicle.

Defendant was seated on the driver's side of the Buick, and Mark Smith occupied the passenger side of the vehicle. As individuals would reach the window of the car, they would hand something to either Defendant or Smith. Defendant and Smith manipulated some type of cylindrical object, handing it to each other depending upon which side of the vehicle people were located. No one stayed at the car's side very long.

The Detectives pulled their car directly in front of Defendant's vehicle, facing it. They ordered Defendant and Smith out of the Buick. Morici reached inside the Buick and noticed a Raid brand aerosol can lying on the front seat. Unscrewing the false bottom of the can, he discovered one bag of a white powdery substance, another bag containing a brown powdery substance, and eighty-four empty capsules containing powdery residue. Defendant was carrying $580 in cash while Smith carried no money at all. The Buick was registered in Defendant's name. One of the bags contained .98 grams of cocaine and the other contained 1.09 grams of heroin.

Defendant testified and called two witnesses in his defense, which was a denial that he possessed any controlled substance or drug paraphernalia.

■ Initially, Defendant asserts the State used some of its peremptory challenges to strike blacks because of their race. The State used five of its six peremptory challenges to remove individuals from the jury panel who happened to be black, leaving six blacks remaining. Defendant used five of his peremptory strikes to remove whites. The petit jury which heard this case contained five blacks and seven whites. Defendant is black.

Specifically, Defendant challenges the striking of venirepersons Neal Harris and Yvonne Durham. The prosecutor explained these specific strikes:

> Juror No. 3, Harris, page one, I just struck him because he did not respond to my questions. I asked numerous times if anyone was a victim of a crime, Neal Harris never told me of one. When de-

fense got up, all of a sudden he was one, and he volunteered that to the defense. I did not like his appearance for court. Very sloppily dressed and not the type of juror I want on any of my cases. And again, I don't think he was interested in anything I had to say about this case. The next strike I had was Yvonne Durham, on the next page. Asked whether or not anyone was a victim of crime, didn't respond to me, but did respond to Mr. Knappenberger. I also just did not like her demeanor with me. She would not look me in the eye. When I was addressing her row she constantly looked down. She was very open to Mr. Knappenberger and anything he had to say. I did not like her demeanor.

A review of the record supports the prosecutor's statements regarding the responsiveness of both venirepersons. This record does not support a *Batson* violation. *State v. Antwine*, 743 S.W.2d 51, 66–67 [18] (Mo. banc 1987).

■ In his II point, Defendant states the trial court erred when it denied his motion for a mistrial during the State's cross-examination of defense witness Mark Smith after the prosecutor asked Smith if he had ever offered to sell drugs to Defendant. The question was not answered. The trial court sustained Defendant's objection and instructed the jury to disregard it. The trial court was in the best position to determine whether a mistrial should be granted. It was not error to refuse to grant a mistrial. *State v. Sidebottom*, 753 S.W.2d 915, 919–920 [2–4] (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

For his III point, Defendant challenges the "reasonable doubt" instruction MAI–CR3d 302.04. This challenge has been denied many times. It is again denied. *State v. Twenter*, 818 S.W.2d 628, 634 [5] (Mo. banc 1991).

■ In his IV point, Defendant asserts the trial court improperly permitted "the prosecutor to instruct the jury on the law in an attempt to commit the jury to a guilty verdict." But not so. Control of voir dire is vested in the discretion of the trial court

and this court will interfere with that discretion only if the record shows a manifest abuse of discretion and the real probability of injury to the complaining party. *State v. Tarkington*, 794 S.W.2d 297, 299 [4] (Mo.App.1990). It is true the prosecutor was on tenuous grounds when she prefaced a question to the venire panel with: "So if you believe these two people possessed drugs beyond a reasonable doubt and they were indeed drugs and drug paraphernalia you have to convict him." The question which followed was: "Does anybody have a problem that I have to prove this case beyond a reasonable doubt?" In the context and circumstances of this case, the trial court did not show a "manifest abuse of discretion" in that the actual question did not require a commitment as to guilt in advance; the venire panel had already been instructed it was the Court's duty to instruct the jury upon the law applicable to the case; and the jury was properly instructed on "reasonable doubt." *State v. Leisure*, 749 S.W.2d 366, 373 [3] (Mo. banc 1988).

■ Furthermore, this court refuses to declare as reversible error these statements by the prosecutor in that the Defendant subsequently restated these comments as: "... the instructions of the Judge say unless you find him guilty beyond the benefit of the doubt you must give him the benefit of that doubt." *See Tarkington*, 794 S.W.2d at 300 [4]. Point denied.

■ For his V point, Defendant proffered reversible error in that a variance existed between the indictment and jury Instruction No. 7. Defendant claims the indictment charged him with "use of drug paraphernalia" in which he "knowingly used" a Raid aerosol can with a false bottom "to conceal heroin and cocaine" while Instruction No. 7 charged Defendant "possessed with the intent to use drug paraphernalia, a Raid aerosol can."

This is not a fatal variance. Both the charge and the instruction were based on § 195.020.2, RSMo 1986. The instruction did not submit a new and distinct offense from the one with which the Defendant

was charged. *State v. Brotherton*, 797 S.W.2d 813, 817 [6, 7] (Mo.App.1990). The variance did not result in prejudice to the Defendant. *State v. Martin*, 633 S.W.2d 80, 82 [2] (Mo. banc 1982).

 For his VI point, Defendant asserts the trial court erred in failing to declare a mistrial "after the prosecutor violated the motion *in limine* and introduced hearsay into evidence and committed other acts of misconduct, because her misconduct deprived Defendant of a fair trial in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution. Also, the evidence was irrelevant, immaterial and prejudicial in any event." This point presents nothing for review. It leaves us in the dark about wherein and why the court erred. In any event we have reviewed Defendant's argument relating thereto and find no prejudicial error.

Judgment affirmed.

CRANDALL, P.J., and AHRENS, J., concur.