**STATE of Missouri, Appellant,**

v.

**James W. DICUS, Respondent.**

**No. 62060.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 29, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 18, 1993.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for appellant.

Clinton Almond, Hillsboro, for respondent.

CRIST, Judge.

The State appeals an order dismissing the charges against Defendant for first degree assault and armed criminal action because of ineffective assistance of counsel. We reverse and remand.

On December 3, 1990, Defendant was charged with first degree assault, armed criminal action, and unlawful use of a weapon in connection with a shoot-out between him and George Michael Boyer (Victim). Depositions of various witnesses, Defendant and Victim, were filed with the trial court. These depositions reveal Defendant and some members of his family came to the home of Janet Boyer, Victim's sister-in-law. Defendant began taking photographs. Victim, who had been drinking alcoholic beverages, exited the trailer. Victim and several witnesses stated Defendant and the other people with him had guns.

Victim asserts he shot into the air and told them to leave. Victim was then shot in the arm.

After Defendant was charged, he hired an attorney, Norman Stricker, to represent him. Stricker was his attorney until after the preliminary hearing. At that time, Stricker became ill and could not continue his representation of Defendant. There is also some discussion that Stricker's license to practice law may have been suspended for failure to pay his annual dues. Defendant hired a new attorney who filed a motion to dismiss the charges. Defendant asserted he could not receive a fair trial under the Constitution of the United States because of "ineffective assistance of Defendant's former counsel and the disappearance of evidence critical to Defendant's defense...." Defendant first alleged a videotape which had been in the custody of the Washington County Sheriff's Department no longer existed. He stated the videotape depicted the crime scene and a statement of Victim made immediately after the shooting. He further alleged he had entrusted to his former legal counsel, Norman Stricker, exculpatory evidence which was no longer available. This evidence included a tape recording of Defendant's preliminary hearing, copies of photographs which Defendant took at the time of the shooting, and a spare tire cover with bullet holes removed from Defendant's jeep immediately after the shooting. Defendant argued the alleged ineffectiveness of Stricker had so tainted his right to fair trial, it could not be remedied by his present counsel.

Two proceedings discussing the motion to dismiss were held: a "Pre–Trial Conference" on March 25, 1992, and a hearing on the motion to dismiss on May 18, 1992. In each proceeding, much discussion was had among the attorneys and the judge, but no evidence was presented. The Legal File contains affidavits of Defendant, his wife, and his son, all of which are essentially identical. These affidavits reveal the following:

1. Photographs: Defendant states he gave them to Stricker. One photograph shows Victim's truck blocking the road. Another shows a witness drinking a beer. Another shows "someone on the porch of Janet Boyer's trailer holding a gun."

2. Spare tire cover: It contains bullet holes due to shots fired at him during the incident.

3. Tape Recording: Defendant asserts Stricker took the tape recording of the preliminary hearing with him.

Defendant's affidavit further states: "Neither my wife nor I, nor any member of my family, took the tape recording, the pictures or the spare tire cover from Mr. Stricker's office or residence."

The record also includes depositions of Norman Stricker and his wife. Stricker admitted Defendant gave him the spare tire cover and the photographs. He stated the photographs were of "Mike Boyer's [Victim] truck setting in the road leading to Mr. Dicus' residence ... [and] some pictures of skid marks on the Pat Daley Road that leads from '21' down to the road that leads to Mr. Dicus' residence." He stated the spare tire cover had "two holes in it that looked like they had been made with a .22 caliber, by a .22 caliber bullet, and there was (sic) holes that looked like they were made by shotgun pellets, approximately, I would guess, Number 4's." He stated he had placed the spare tire cover in his van and put the photographs in his office. Mrs. Stricker stated Defendant's son came to her house and took the spare tire cover. Stricker stated he believed the photographs were in the file he turned over to Defendant later.

Stricker further stated he had made a tape recording of the preliminary hearing. However, Stricker asserted Defendant's wife had taken the recording following the preliminary hearing because the family wanted to listen to it. He states he has not seen the recording since that day.

On May 18, 1992, the trial court orally sustained Defendant's motion to dismiss the charges without reciting the specific grounds for such dismissal. State appeals.

■ Before addressing the merits of this appeal, we must first determine whether

the State has the right to appeal. Defendant asserts the State has no right of appeal in this case. Defendant argues the trial court dismissed the charges because of destruction and loss of evidence, which he avers is analogous to a ruling of insufficiency of the evidence, precluding the State's appeal. We disagree.

Section 547.200, RSMo 1986, provides:

The State, in any criminal prosecution, shall be allowed an appeal in the cases and under the circumstances mentioned in section 547.210 and in all other criminal cases except those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant.

In the case at hand, the State has the ability to appeal the trial court's order dismissing the charges against Defendant only if double jeopardy would not result. We believe double jeopardy is not implicated in this case.

■ Jeopardy does not attach until a defendant is " 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062[4], 43 L.Ed.2d 265 (1975), *quoting United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). In a jury trial, this occurs when the jury is impaneled and sworn; while in a nonjury trial it attaches when the court begins to hear evidence. *Serfass*, 420 U.S. at 388, 95 S.Ct. at 1062; *State v. Jarvis*, 809 S.W.2d 460, 461[3] (Mo. App.1991).

In *Serfass*, the United States Supreme Court addressed the issue of whether jeopardy attached after the granting of Defendant's motion to dismiss the indictment prior to trial. *Serfass*, 420 U.S. at 377, 95 S.Ct. at 1055. The Court held jeopardy had not attached because the defendant had not been put to trial before a trier of fact, nor had he waived his right to a jury trial. *Id.* at 389, 95 S.Ct. at 1063. The Court further stated that even considering evidence outside the indictment was not the functional equivalent of acquittal causing jeopardy to attach. *Id.* at 392, 95 S.Ct. at 1064–65. "Without risk of a determination of guilt,

jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* at 391–92, 95 S.Ct. at 1064.

We have also examined the issue in *State v. Casaretto*, 818 S.W.2d 313, 315–16[5] (Mo.App.1991). In *Casaretto*, prior to trial, the defendant filed a motion to dismiss on the grounds the statute of limitations had run. *Id.*, at 314. The trial court sustained his motion and the State appealed. *Id.* We found jeopardy had not attached when the trial court was entertaining the motion to dismiss because the defendant's guilt or innocence was not in question. *Id.* at 316[5].

We find jeopardy has not attached in this case and the State may appeal the trial court's dismissal pursuant to § 547.200.2, RSMo 1986. *Serfass*, 420 U.S. at 389, 95 S.Ct. at 1063; *Casaretto*, 818 S.W.2d at 316[5]; *See also, State v. Reed*, 770 S.W.2d 517, 520[5] (Mo.App.1989) (jeopardy did not attach where dismissing indictment prior to trial); *State v. Coor*, 740 S.W.2d 350, 355[7] (Mo.App.1987) (jeopardy did not attach in trial court's pretrial dismissal of indictment); and *State v. Brown*, 722 S.W.2d 613, 616[2] (Mo.App.1986) (State could appeal the trial court's dismissal of charges on constitutional speedy trial grounds).

In its sole point on appeal, the State asserts the trial court erred in dismissing the charges on the grounds of ineffective assistance of counsel for two reasons: (1) claims of ineffective assistance of counsel can only be presented in a Rule 29.15 motion for post-conviction relief and cannot be considered in a pre-trial motion to dismiss; and (2) even so, Defendant made no showing of prejudice to support such a claim.

■ We do not need to decide whether a pre-trial motion to dismiss for ineffective assistance of counsel is proper. Even if such a motion were proper, the trial court clearly erred in sustaining the motion to dismiss on such grounds. Defendant carries the burden of proving by a preponderance of the evidence: (1) his counsel's performance was deficient; and (2) Defendant was prejudiced by that deficiency. *Strick-*

*land v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064[5], 80 L.Ed.2d 674 (1984). In showing prejudice, Defendant must prove his attorney's errors had an "adverse effect" on his defense. *Id.* 466 U.S. at 693, 104 S.Ct. at 2067[18]. In doing so, it is not enough to show the errors had some "conceivable effect on the outcome of the proceeding." *Id.* He must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068[19].

 Defendant failed to meet this burden. He did not show how the "lost" evidence affected his defense adversely or that he was completely unable to present a defense. The only possible evidence presented on the issue of prejudice was his current attorney's statement at the pretrial conference of March 25, 1992, in reference to the spare tire cover:

> We believe that's a very crucial piece of evidence in this case, because there's going to be testimony of shooting back and forth, and there's going to be testimony that the Boyer family fired the first shot and some other shots, and we believe that the physical evidence is very important in this case to Mr. Dicus' defense.

This testimony is pure speculation that the "lost" evidence may have some conceivable effect on Defendant's defense. Indeed, it is virtually impossible for a defendant to show prejudice prior to trial. The trial court clearly erred in sustaining Defendant's motion to dismiss for ineffective assistance of counsel.

Defendant asserts the trial court's dismissal could have been based on the State's role in erasing or throwing out the videotape of the crime scene and Victim's statement. However, Defendant failed to show any bad faith on the part of the State in destroying that evidence. *State v. Richard,* 798 S.W.2d 468, 471[3] (Mo.App.1990); *State v. Willers,* 794 S.W.2d 315, 320[8] (Mo.App.1990); *State v. Petterson,* 780 S.W.2d 675, 679[11] (Mo.App.1989). At most, it was shown the State inadvertently destroyed the evidence. Therefore, if the trial court had such grounds in mind, it erred in sustaining the motion to dismiss.

Reversed and remanded.

AHRENS, P.J., and REINHARD, J., concur.