STATE of Missouri, Respondent,

v.

Mark PENDLETON, Appellant.

Mark PENDLETON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 61501, 63345.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 24, 1993.

---

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Asst. Atty. Gen., Jefferson City, for respondent.

Before GARY M. GAERTNER, C.J., and PUDLOWSKI and SIMON, JJ.

## PER CURIAM.

Appellant, Mark Pendleton, appeals his conviction in the Circuit Court of the City of St. Louis for first degree assault, RSMo § 565.050 (1986), and armed criminal action, RSMo § 571.015 (1986). He was sentenced by the Honorable Charles A. Shaw as a prior offender to consecutive terms of thirty and fifteen years; respectively. Appellant also appeals the denial of his postconviction relief motion without an evidentiary hearing. We affirm.

In the light most favorable to the verdict, the evidence established that on the evening of February 21, 1991, appellant was visiting Shirley Taylor at her home. At some point during the evening, Danny Lawson, having just been to the liquor store, arrived on the scene. The three began drinking.

During the evening, an argument ensued. Ms. Taylor had owned two rifles which she kept in her house. However, about two weeks before the evening in question, Mr. Lawson had pawned one of the rifles for $50. Appellant began to question Lawson as to why he had stolen Taylor's gun. Appellant then went into another room, got the second rifle owned by Ms. Taylor, and returned to where Ms. Taylor and Mr. Lawson were talking. Ms. Taylor took the gun away from appellant and put it back in the other room. However, appellant again obtained the rifle and demanded that Lawson tell him why he had taken Taylor's gun. Ms. Taylor distracted appellant while Mr. Lawson escaped out

the front door, but appellant followed. As Lawson was opening the front gate, appellant fired. The bullet hit Lawson, traveling through his left elbow and into his chest. Lawson continued through the gate, ran across the street to a friend's house, and collapsed.

The police arrived and Lawson was rushed to the hospital, where he spent the next eight days. The bullet had severed Lawson's brachial artery. He also suffered a lacerated spleen and kidney and underwent surgery twice.

In speaking with Officer Michael Lauer, Mr. Lawson identified appellant as the person who shot him. Officer Lauer then questioned appellant. Lauer testified appellant initially told him that the gun accidentally went off during an argument with Lawson. Appellant told Lauer that Lawson tried to take the gun to commit a robbery. According to appellant's story, Lawson grabbed the barrel end of the rifle with both hands, trying to take it from appellant. The gun then went off as appellant and Lawson struggled. However, Officer Lauer told appellant that Lawson's injuries could not have happened in that manner. Appellant then recanted his story.

Appellant next told Officer Lauer that the argument was really over a gun Lawson had stolen from Taylor. Appellant told Officer Lauer that he had followed Lawson out the front door pointing the rifle at him, but had only pulled the trigger when Lawson turned and said, "Lets fight."

Appellant was convicted by a jury on all charges. On January 31, 1992, the Honorable Charles A. Shaw sentenced appellant as a prior offender to forty-five years' imprisonment.

Appellant filed a *pro se* Rule 29.15 motion on September 12, 1992. Counsel was appointed and an amended motion was filed on November 16, 1992. Judge Shaw denied appellant's motion without an evidentiary hearing. We have consolidated appellant's appeals pursuant to Rule 29.15(*l*).

Appellant's first contention on appeal is that the trial court erred in denying his

*Batson* motion.[1] Appellant contends the State's articulated reasons for striking one juror, Venireperson Garner, were weak and pretextual. He adds that the State's use of five of six strikes to remove blacks from the jury panel was indicative of purposeful discrimination. We disagree.

The record reveals that after strikes for cause, the jury panel consisted of thirteen whites and eleven blacks. The state used its peremptory strikes to remove five blacks and one white. Noting this, and the fact that the defendant was black, the Court required the state to give reasons for its peremptory strikes. The following dialogue concerning Venireperson Garner ensued:

MR. MOSS: All right. My first strike is Miss Garner. She struck me as being too strong willed and strong voiced. She is the big, heavy set lady that was number two on the panel. She has a nephew who's, within the last two years, has been arrested for and sent to court for a crime, who would be, in my estimation be the same age as the defendant. And since she strikes me as a strong willed person, I frankly, given her other background, would not want her on the jury because I am afraid she would lead them the wrong way.

THE COURT: Any response, Mr. Schwartz?

MR. SCHWARTZ: As far as strong willed, page two, Juror Number 680, Miss Mangelsdorf, as well as Juror Number 623, Miss Sandlin, are both females. They both happen to be white. And they are—both seemed to be strong willed women. They were outspoken on issues that we discussed. And they spoke loudly and they are both heavy set women.

THE COURT: I don't think anybody spoke as loudly as the juror that Mr. Moss is referring to. She sounded very straight and she spoke louder, clearer and with more strength in her voice than any of them. I have to agree with his assessment, and if that's his reason, the Court is not going to find any racial basis in that.

MR. MOSS: I might also add that both the people he mentioned have been victims of crimes, and one the victim of violent crime, the two white women he refers to.

The Missouri Supreme Court, in *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992), formed a three-step procedure which courts must follow when encountered with a timely *Batson* challenge.

First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. (Citations omitted). Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. (citations omitted)

However, the prosecutor's explanation will be regarded as race-neutral unless discriminatory intent is inherent in the explanation. *Id.* at 934, 939 n. 6.

In the present case, the State's proffered reasons for striking Venireperson Garner were: 1) she had a nephew approximately the same age as the defendant who had been recently arrested; and 2) the venireperson was a strong-willed woman who might then influence the other jurors. The white venirepersons appellant contends were similarly situated women were both crime victims, and thus attractive to the prosecution. We agree with the trial court that there is no racial motivation inherent in the State's explanation.

At trial, appellant did not challenge the State's proffered reasons for striking the other four black venirepersons. If the trial court and the appellant were satisfied with the State's explanations at trial, this court is not in a position to dispute them. *State v. Gray*, 849 S.W.2d 115, 118 (Mo.App., E.D. 1993). We will therefore not consider these in appellant's *Batson* challenge.

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Additionally, appellant contends that the act of striking five of six black venirepersons is "purposeful discrimination" in and of itself. This theory totally bypasses the Supreme Court's analysis of *Batson* challenges and will not be considered here. *See State v. Parker*, 836 S.W.2d at 939. Point denied.

■ Appellant next contends that the trial court erred in denying his Rule 29.15 motion without an evidentiary hearing. Appellant alleges his counsel was ineffective in failing to call Shirley Taylor as an eyewitness who would have corroborated his testimony. We disagree.

■ We note our review of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *State v. Gray*, 849 S.W.2d at 118. The findings and conclusions of the motion court are not clearly erroneous unless, upon a review of the entire record, the appellate court is left with a definite and firm impression that a mistake has been made. *Id.* "A defendant is entitled to an evidentiary hearing only if: (1) his Rule 29.15 motion alleges facts, not conclusion, warranting relief; (2) those facts raise matters unrefuted by the record; and (3) the matters complained of resulted in prejudice to the defendant." *Id.* at 118–119. No evidentiary hearing is necessary if the motion, files and records of the case conclusively show that the movant is entitled to no relief. Rule 29.15(g); *State v. Gray*, 849 S.W.2d at 119.

To establish ineffective assistance of counsel for failure to secure a defense witness' testimony, the defendant must show: "(1) the witness could have been located through reasonable investigation; (2) the witness, if called, would have testified; and (3) the testimony would have provided a viable defense." *Id.* at 119.

In the present case, we cannot find the motion court erred in denying appellant a hearing on his claim of ineffective counsel. In his motion for postconviction relief, appellant only alleged that defense counsel failed to call Shirley Taylor, and that she could have substantiated movant's testimony. We agree with the motion court that movant

failed to allege his attorney was ever made aware of what the substance of Ms. Taylor's testimony would be. Furthermore, at the conclusion of appellant's trial, after appellant had been found guilty by a jury of his peers, the Court questioned appellant concerning the performance of defense counsel:

Q. Are you satisfied with the services of your attorney?

A. Yeah.

Q. Is there anything you have asked him to do that you have—that he has not done?

A. Huh-uh.

Q. Is there anything further that you wish him to do?

A. No.

Q. Anything you wish to say about your satisfaction with his services outside his presence and hearing.

A. No.

THE COURT: Very well. The Court will then find there is no probable cause that you have received ineffective assistance of counsel.

Viewing appellant's testimony together with his motion, we find he failed to show that counsel was remiss in failing to secure Shirley Taylor's testimony, or that this testimony would have provided a viable defense. We further hold that the court did not err in denying appellant an evidentiary hearing on his claim of ineffective assistance of counsel. Point denied.

■ Appellant next argues that the trial court erred in refusing to submit an instruction on the lesser included offense of second degree assault. Appellant contends the jury could have reasonably found Lawson's injuries were not serious enough to find appellant guilty of first degree assault. We disagree.

■ An instruction on a lesser included offense is required only if probative evidence could form a basis to acquit on the greater charge and convict on the lesser. *State v. Simmons*, 751 S.W.2d at 90. To require an instruction on the lesser offense, the evidence must arguably show a lack of an essential element of the greater offense. *State v.*

*McBurnett,* 694 S.W.2d 769, 772 (Mo.App., E.D.1985).

First degree assault requires that the defendant attempt to kill or knowingly cause or attempt to cause serious physical injury to another person. RSMo § 565.050 (1986), *State v. Simmons,* 751 S.W.2d 85, 89 (Mo. App., E.D.1988). As charged at trial, a conviction for first degree assault requires a finding that the victim suffered serious physical injury. *See* MAI–CR 319.02, Notes on Use 2–3. Assault in the second degree may be found when physical injury, but not serious physical injury is inflicted. *See* MAI–CR 319.12; *State v. Simmons,* 751 S.W.2d at 89.

"Serious physical injury" is a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." RSMo § 556.061(28) (Cum.Supp.1993). Serious physical injury, as applied to first degree assault, has been held to include: a four-inch permanent scar as a result of a knife wound, *State v. Pettis,* 748 S.W.2d 793, 794 (Mo.App., E.D.1988); a five-inch laceration on the side of the neck and a two-inch laceration on the arm from a knife attack. *State v. Williams,* 740 S.W.2d 244, 246 (Mo.App., E.D.1987); a gunshot wound to the left lower lobe of the lungs with resulting injury to the pulmonary artery branch of that lobe, *State v. White,* 738 S.W.2d 590, 592–93 (Mo.App., E.D.1987).

We find no evidence to suggest that the victim's injuries were anything but serious. The mere fact that the victim suffered a gunshot wound to the chest confirms this. Lawson's kidney, spleen and a major blood vessel were injured by a bullet. No reasonable juror could find anything but a serious physical injury. Therefore, the trial court did not err in refusing to give a second degree assault instruction. Point denied.

■ Appellant next attacks the trial court's refusal to grant a mistrial due to improper prosecutorial comments. At trial, the prosecutor commented on a recent conviction appellant received for gun use. The trial court sustained an objection by appellant's counsel and instructed the jury to disregard the prosecutor's statements. However, the trial judge refused to grant appellant's motion for mistrial, which appellant argues is prejudicial error.

■ We note that mistrial is a remedy only to be employed in extraordinary circumstances. *State v. Hall,* 829 S.W.2d 29, 31 (Mo.App., E.D.1992), *State v. Sidebottom,* 753 S.W.2d 915, 919–20 (Mo. banc 1988). The trial court is in the best position to determine whether a mistrial should be granted. *State v. McAlister,* 829 S.W.2d 549, 551 (Mo.App., E.D.1992). We will only review a denial of mistrial to find whether the trial court abused its discretion as a matter of law. *State v. Cantrell,* 775 S.W.2d 319, 322–23 (Mo.App., E.D.1989).

In the present case, we find the trial court did not err in failing to declare a mistrial. The court determined that the prosecutor's improper statements were cured by sustaining appellant's objection and instructing the jury to disregard. Thus, the court's ruling was consistent with other courts' treatment of similar statements. *See e.g., State v. McAlister,* 829 S.W.2d at 551 (sufficient to sustain objection and instruct jury to disregard prosecutor's unanswered questions concerning witness' drug use with defendant— motion for mistrial denied); *State v. Cantrell,* 775 S.W.2d at 322–23 (no need for mistrial when objection to prosecutor's comments on improperly obtained evidence was sustained); *State v. Richardson,* 810 S.W.2d 78, 79 (Mo. App., W.D.1990) (improper closing arguments, in which prosecutor commented on matters not in evidence, cured by objection and instruction for jury to disregard). In light of the above, we cannot find the trial court abused its discretion, as a matter of law, by refusing to grant a mistrial. Point denied.

■ Appellant next assails the trial court for failing to sustain his objections to the prosecutor's closing arguments. He claims the prosecutor attempted to make the jurors personally fear for their own safety should the defendant be released. The statements appellant complains of decried an increasing level of violence in the city. The prosecutor then ended with a plea, "If you want to let our young men keep going around with their rifles, with their hand guns ... solving their

problems with shooting each other, fine. We won't have any young men left to worry about."

We recognize that the trial court is given broad discretion to control closing arguments and may give counsel wide latitude in their summaries. *State v. Vitale*, 801 S.W.2d 451, 457 (Mo.App., E.D.1990). We will not disturb the trial court's ruling absent a clear abuse of discretion to the prejudice of the accused. *Id.* To find an abuse of discretion, the prosecutor's statements must be clearly unwarranted. *Id.*

We find the prosecutor's closing remarks acceptable. In closing arguments, the prosecutor may argue such propositions as the prevalence of crime in the community and the personal safety of its inhabitants. *State v. Clemmons*, 753 S.W.2d 901, 909 (Mo. banc 1988). Courts have consistently held the prosecutor may stress the evils that will flow to society from the failure of the jury to do its duty, and such pleas may call upon common experience. *State v. Taylor*, 745 S.W.2d 173, 176 (Mo.App., E.D.1987). The prosecutor in the present case did nothing more than stress the prevalence of crime in the city, and warned the jury of the consequences of its failure to do its duty. We therefore find the trial court did not commit error. Point denied.

Finally, appellant contends the trial court erred by defining "reasonable doubt" as being "firmly convinced of the defendant's guilt." This argument has been rejected by every Missouri appellate court, and we decline to accept it now. Point denied. Rule 84.16(b).

The judgment of the trial court is affirmed.