STATE of Missouri, Plaintiff/Respondent,

v.

Willie TAYLOR, Defendant/Appellant.

No. 64895.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 8, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 8, 1994.

Application to Transfer Denied
Jan. 24, 1995.

Charles M. Shaw, Shaw, Hawlett & Knappenberger, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant, Willie Taylor, appeals the conviction of two counts of possession of a controlled substance, § 195.202 RSMo Cum. Supp.1993 for which he was sentenced to two concurrent terms of eight years of imprisonment as a prior drug offender.

We review the facts in a light most favorable to the verdict. On April 14, 1992, St. Louis police officers executed a search warrant on 2004 Adelaide. Detective Vickers of the St. Louis Police Department Narcotics Task Force had obtained the search warrant based upon information from a confidential informant and subsequent surveillance of the residence.

The confidential informant advised Detective Vickers that a black male known to the informant as "Tony" was selling heroin from the residence at 2004 Adelaide. "Tony" was described as approximately 30–32 years old, 5'5" tall, 185 pounds with a medium complexion. Based upon this information, Detective Vickers, with other officers, conducted surveillance on six different occasions during the week prior to the execution of the warrant. He observed that there were many short-term visitors that would use a "pattern knock code" to gain entry into the residence. The defendant was observed opening the front door, coming and going from the residence using a key and driving a green Jaguar. After conducting the surveillance, Detective Vickers obtained a search warrant based upon the knowledge gained from the informant and through the surveillance.

On April 14, 1992, St. Louis Police Department detectives went to the residence to execute the search warrant. The detectives knocked on the front door, identified themselves as police officers and stated that they had a search warrant. Detective Vickers observed the defendant through a small viewing window in the front door. Defendant appeared surprised and he turned and ran into the interior of the residence. The detectives, using a battering ram, forced open the front door.

While the detectives were breaking down the front door, Officer Zwick and Detective Weiter, who were posted at the rear and side of the residence, saw the defendant stick a portion of his body out of the window and toss a brown plastic grocery bag in the direction of the roof of the house next door. The bag, which landed in the gangway next to the house and was seized by the detectives, contained a gun and small baggies of heroin and codeine.

Detective Vickers, after entering the residence through the front door, found the defendant on the third floor near the open window. Detective Vickers handcuffed the defendant and began bringing him downstairs. At that point, Officer Zwick notified Detective Vickers that they had found the bag in the gangway. Detective Vickers went outside and observed that the bag contained narcotics.

Detective Vickers placed the defendant under arrest and advised him of his *Miranda* rights. After indicating that he understood his rights, Detective Vickers asked the defendant if he threw the bag from the window. The defendant responded "Are you crazy? I'm not taking the case for some other guy's dope that I was just holding, I ain't saying shit till I see my lawyer, talk to my lawyer."

Three electronic digital scales, a small coffee blender with white powder residue, $550 in currency and $250 worth of food stamps were found in the second floor back bedroom which the defendant shared with his girlfriend Sheila Proctor. The substances recov-

ered from the bag thrown by the defendant were tested and determined to be heroin and codeine.

On September 13, the jury found the defendant guilty of two counts of possession of a controlled substance. On October 15, defendant was sentenced as a prior, persistent and prior drug offender to two concurrent terms of eight years. Notice of this appeal was filed on October 15, 1993.

Defendant contends the trial court erred in the following six points: (1) failing to suppress evidence seized from the defendant's residence because the search warrant was issued based upon a faulty affidavit; (2) allowing the detectives to testify about the defendant's post-*Miranda* statement because it was exculpatory and not an admission; (3) allowing MAI–CR 3d 302.04 which defines "reasonable doubt" to be read to the jury because it is unconstitutional; (4) refusing to submit a jury instruction based upon MAI–CR 3d 310.08 regarding "mere presence" which allegedly would have warned the jury that defendant's presence alone was insufficient to make him responsible for the crime; (5) allowing Detective Vickers to testify over defense counsel's objection that he learned through alleged hearsay statements that the defendant and his girlfriend occupied the back bedroom on the second floor; and (6) failing to grant a mistrial when the state failed to provide "material evidence" admitted during the trial and requested by the jury during its deliberations.

## I

■ In his first point, defendant contends that the trial court erred in failing to suppress evidence seized from the defendant's residence. It is unclear from defendant's brief exactly what evidence should have been suppressed. The alleged grounds for suppression are that the search warrant issued was invalid because it was based upon the faulty affidavit of Detective Vickers. The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Shuck*, 800 S.W.2d 49, 51 (Mo.App.W.D.1990).

There are two grounds which defendant claims make the affidavit invalid.

■ The first reason is that the defendant does not fit the description given by the confidential informant. Defendant cites no case law and this court finds none on its own to support the proposition that the defendant had to be specifically identified as "Willie Taylor" in the search warrant. In *Gates, supra*, the Supreme Court stated that reviewing courts should give great deference to a magistrate's determination of probable cause. It would be inconsistent with the Fourth Amendment's strong preference for searches for courts to have a grudging or negative attitude toward warrants. Courts should interpret affidavits in a common sense as opposed to a hyper-technical manner. *Gates v. Illinois*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547. With these guidelines for reviewing the validity of warrants in mind, we find that the search warrant was valid despite the affidavit not specifically naming the defendant, Willie Taylor.

■ Defendant also claims that the affidavit was faulty because the confidential informant was unreliable. Defendant cites *State v. Dudley*, 819 S.W.2d 51, 54 (Mo.App.S.D. 1991) for the principle that hearsay could be a proper basis to establish probable cause if there is a substantial basis for crediting the hearsay. The defendant further relies on *Dudley* for the point that informants of the "criminal milieu" deserve less of a presumption of reliability. *Id.* at 54. Defendant asserts that the confidential informant was not a substantial basis for probable cause.

■ While conducting surveillance, it is not necessary to actually observe drugs; it is only necessary to show a substantial basis that contraband will be found. *State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc 1990) (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547). *State v. Vega*, 875 S.W.2d 216, 218 (Mo.App.E.D.1994). "It is enough, for the purposes of assessing probable cause that 'corroborating through other sources of information reduced the chances of a reckless prevaricating tale' thus providing a 'substantial basis for crediting the hearsay'" *Illinois v. Gates*, 462 U.S. at 244–245,

103 S.Ct. at 2335, 76 L.Ed.2d at 552 (citing *Jones v. United States,* 362 U.S. at 257, 269, 271, 80 S.Ct. 725, 735, 736, 4 L.Ed.2d 697, 707, 708).

The affidavit in this case had two sources of reliability. First, the affidavit demonstrated that confidential informant had personal knowledge that quantities of heroin were being kept and sold at the address in question. "Probable cause does not require that an informant be one whose reliability has been previously established." *State v. Griffin,* 756 S.W.2d 475, 484 (Mo. banc 1988). The true inquiry is whether the informant's information is reliable. *Id.* at 484. The confidential informant had proven to be reliable in the past based upon information that he/she had provided the detective. Such information apparently leading to ten narcotics arrests and four convictions. This information alone would have been sufficient for the magistrate to find the existence of probable cause. In *State v. Vega,* 875 S.W.2d 216, 218 (Mo.App.E.D.1994), this court stated that "tips by informants found to be reliable in the past are sufficient to support an issuing judge's finding of probable cause." *See also, State v. Laws,* 801 S.W.2d at 70.

The affidavit contained a second source of probable cause. "Missouri courts have held that 'personal knowledge of the informant corroborated through other sources is enough to establish probable cause.' " *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990) (citing *State v. Moiser,* 738 S.W.2d 549, 557 (Mo.App.E.D.1987)). After receiving the information from the confidential informant the affiant, Detective Vickers, conducted his own independent surveillance of the residence on at least six occasions with three other officers. The surveillance verified the location of the residence, appellant's description and that numerous short-term visitors frequented the residence. In *State v. Keely,* 791 S.W.2d 864, 866 (Mo.App.E.D.1990), we held that activity observed after receipt of information to verify any suspicious traffic was enough to constitute independent verification of the information. *See also State v. Wallace,* 593 S.W.2d 545, 548 (Mo.App.W.D.1979). All the information obtained through the surveillance was consistent with that supplied by the informant, thereby reducing the chance that he was not telling the truth.

The affidavit, when viewed in light of totality of the circumstances as required by *Illinois v. Gates, supra* and *State v. Hammett,* 784 S.W.2d 293, 295 (Mo.App.E.D.1989), was validly issued. The information supplied by the confidential informant, which on its own would have been sufficient, was corroborated by the surveillance conducted by the officers, thus providing the necessary probable cause to issue a warrant. The issuance of the warrant was done with a substantial basis and was not clearly erroneous. Point denied.

## II

█ Defendant's second contention of error is that the trial court erred in allowing the detectives to testify regarding defendant's post-*Miranda* statement that "... I ain't taking the case for some other dude's dope that I was just holding." Defendant claims that the statement was an exculpatory statement, not an admission against interest and as such is inadmissible.

In *State v. Kesler,* 745 S.W.2d 846 (Mo.App.E.D.1988), this court stated that "[a]n admission is a statement or conduct by a party which tends to incriminate him or connect him with the crime charged and which manifests a consciousness of guilt." *Kesler,* 745 S.W.2d at 848. Defendant correctly acknowledges that any admission voluntarily made by him is admissible. *See State v. Marvel,* 756 S.W.2d 207, 211 (Mo.App.S.D. 1988).

Defendant cites *State v. Hampton,* 648 S.W.2d 162, 166 (Mo.App.1983), for his contention that his statement was exculpatory and thus not an admission. While it is true the defendant in that case made the contention that his statement was not an admission, we do not believe the factual situation of that case nor the statement made are similar. In *Hampton,* the defendant stated after being identified in a lineup, "that's why I don't want to stand in any line-ups. I always get picked out." The defendant had been charged with robbery in the first degree, a violation of § 569.020 RSMo 1978. The court held that his statement was immaterial and

irrelevant and not an admission. *Hampton,* 648 S.W.2d at 166.

In this case, the defendant was charged with two counts of possession of a controlled substance, § 195.202 RSMo Cum.Supp.1993. One of the essential elements of the crime charged is possession of the controlled substance. By stating that "I'm not taking the case for some other dude's dope I was just holding . . .", the defendant is clearly admitting one of the essential elements of the crime, *i.e.* possession. We find no abuse of discretion. Therefore, the trial court did not err in allowing testimony regarding the statement. Point denied.

### III

■ Defendant in his third point makes the worn-out argument that the definition of "reasonable doubt" in MAI–CR 3d 302.04, which was read to the jury is unconstitutional. The Supreme Court of Missouri has repeatedly made it clear that this instruction is constitutional. *See, e.g., State v. O'Brien,* 857 S.W.2d 212, 222 (Mo. banc 1993); *State v. Ervin,* 835 S.W.2d 905 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Blakenship,* 830 S.W.2d 1, 13 (Mo. banc 1992). Point denied.

### IV

■ Defendant next contends the trial court erred in refusing to submit to the jury appellant's proffered Instructing No. A., which was patterned after MAI–CR 3d 310.08 regarding "mere presence." Defendant argues it would have "warned" the jury that the defendant's "mere presence" was not enough to convict him of the crime. Instruction No. A read as follows, "[T]he presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible for the offense, although his presence may be considered together with all of the evidence in determining his guilt or innocence." Defendant completely ignores the case law which holds that the refusal to give a requested MAI–CR 3d 310.08 instruction is not error except in cases of accessorial liability. *State v. Lowe–Bey,* 807 S.W.2d 132, 136 (Mo.App. E.D.1991). *See also, State v. Bland,* 757 S.W.2d 242, 246 (Mo.App.W.D.1988); *State v. Rice,* 689 S.W.2d 760, 763 (Mo.App.E.D. 1985). In this case, defendant was not tried on any theory of accessory liability. Therefore, it was not error to refuse to submit the proffered instruction. Furthermore, the Notes on Use state that the instruction is to be given only if the verdict directing instruction is patterned after MAI–CR 3d 304.04 relating to defendant's responsibility for the conduct of another person. *Lowe–Bey,* 807 S.W.2d at 136. Defendant's case did not involve an instruction under MAI–CR 3d 304.04. Point denied.

### V.

■ In defendant's fifth point he contends that the trial court erred when it allowed, over defense counsel's objection, Officer Vickers to testify that he learned through alleged hearsay statements that the defendant lived in the second floor bedroom. Defendant claims the admission of these statements violated his right to confront the witnesses against him. According to Detective Vicker's testimony, he learned from the defendant and his girlfriend, Sheila Proctor, that they lived in the second-floor back bedroom. There is nothing in the record that rebuts this. It is difficult for this court to understand defendant's contention that his right to confront the witnesses against him was violated when it was the defendant himself who supplied the information. The statement by defendant if it was hearsay would constitute an admission. As such, it would be admissible. *See State v. Marvel, supra.*

With respect to the information gained from Sheila Proctor, defendant's girlfriend, it cannot be excluded on hearsay grounds. The defendant, as part of his case in chief, called Sheila Proctor. She testified for the defendant and was subject to examination by defense counsel. The rationale of the hearsay rule is inapplicable to this situation. Therefore, the statement by Detective Vickers cannot be excluded on the basis of a hearsay objection. *See California v. Green,* 399 U.S. 149, 157–158, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489, 495–497 (1970); *State v. Collis,*

849 S.W.2d 660 (Mo.App.W.D.1993). Point denied.

## VI

■ The defendant's final point on appeal is that the trial court erred in failing to grant a mistrial when the state failed to provide material evidence admitted during the trial and requested by the jury during its deliberation. The defendant claims the loss of the bag deprived him of a fair trial. The evidence in question was a gray plastic grocery bag which was inside a brown plastic grocery bag. The brown grocery bag contained heroin, codeine, and a gun. The record is unclear whether all of the contraband or only the gun was actually inside the gray bag which was inside of the brown bag.

■ A mistrial is a drastic remedy only to be employed in extraordinary circumstances. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991); *State v. Sidebottom*, 753 S.W.2d 915, 919–20 (Mo. banc 1988); *State v. Hlavaty*, 871 S.W.2d 600, 606 (Mo.App.E.D.1994); *State v. Pendleton*, 860 S.W.2d 807, 812 (Mo.App.E.D.1993); *State v. Hall*, 829 S.W.2d 29, 31 (Mo.App. E.D.1992). The trial court is in the best position to determine whether a mistrial should be granted. *State v. Hlavaty*, 871 S.W.2d at 606; *State v. Pendleton*, 860 S.W.2d at 812; *State v. McAlister*, 829 S.W.2d 549, 551 (Mo.App.E.D.1992). We will only review a denial of mistrial to find whether the trial court abused its discretion as a matter of law. *State v. Hlavaty*, 871 S.W.2d at 606; *State v. Cantrell*, 775 S.W.2d 319, 322–23 (Mo.App.E.D.1989).

■ Unless a defendant can show bad faith on the part of the state, failure to preserve potentially useful evidence for the defendant does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1989); *State v. Dicus*, 858 S.W.2d 757, 760 (Mo.App.E.D.1993); *State v. Petterson*, 780 S.W.2d 675, 679 (Mo.App.W.D.1989). *See also State v. Sargent*, 702 S.W.2d 877, 882 (Mo.App.E.D.1985).

■ The imposition of a sanction for failure or inability to produce evidence is within the sound discretion of the trial court and an abuse of discretion occurs only when the nonproduced evidence was "material" or of such character that a reasonable likelihood existed that it would have affected the outcome of the trial. *State v. Carr*, 610 S.W.2d 296, 299 (Mo.App.E.D.1980).

Despite the defendant's contentions, the record does not show that the prosecutor lost the gray plastic bag. The trial court in its order simply states "... part of State's exhibit cannot be located." Therefore, it is difficult for this court to find any act of bad faith by the prosecutor.

Moreover, the defendant has failed to show the gray plastic bag constituted material evidence. In *State v. Carr*, *supra*, we held that:

> [t]he vital point which remains is whether the evidence which was not produced was material to defendant's guilt or innocence. Essentially, the question is whether the failure to produce the evidence resulted in a fundamental unfairness to the defendant. Upon the failure or inability of the prosecution to produce evidence, the imposition of a sanction is within the sound discretion of the trial court. An abuse of discretion occurs only where the trial court fails to impose a sanction when the nonproduced information was of such a character that a reasonable likelihood existed that it would have affected the outcome of the trial. (citations omitted).

*State v. Carr*, 610 S.W.2d at 299.

Defendant, in his brief, contends that a significant issue at trial was the inability and accuracy of the detectives identification of the defendant. Defendant alleges there is some connection between the jury wanting to see the gray bag and the credibility of the detectives. The defense cites no authority nor shows any logical connection for this proposition. Any connection between the two comes from defendant's misstatement of the record. On the page of the transcript cited in defendant's brief, Officer Weiter clearly states, "I looked in and was able to see what appeared to be a handgun wrapped in another bag or a piece of plastic and numerous other baggies of what I felt were

narcotics." In addition, Officer Zwick gave the following testimony:

Q. [Defense Counsel] And then you saw through the bag and you saw those things; is that right?

A. [Zwick] No, not through the bag, through the opening in the bag, yes.

We see no connection between the officers' credibility and the gray plastic bag. Furthermore, we do not believe that had the jury examined the gray plastic bag, it would have materially affected the outcome of the trial. The gray grocery bag, in light of the considerable evidence against the defendant, would have had no effect on the outcome of the trial. The failure to produce the gray plastic bag did not deprive the defendant of the right to a fair trial. There was no fundamental unfairness because the jury did not have the opportunity to examine the bag. Therefore, the trial court did not abuse its discretion by not granting a mistrial. Point denied.

Conviction Affirmed.

SMITH, P.J., and WHITE, J., concur.