**P. M. BAKER, et ux., Appellants,**

v.

**The PENN MUTUAL LIFE INSUR-ANCE COMPANY, Appellee.**

**No. A2628.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 3, 1981.

Jack E. Urouhart, Holtzman & Urouhart, Houston, for appellants.

Max Garrett, Wyckoff, Russell, Dunn & Frazier, Houston, for appellee.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a summary judgment for the defendant below in a suit to recover life insurance proceeds. The questions presented on appeal are whether material issues of fact existed concerning (1) the application of the insured's earned dividends to prevent lapse of the policy and (2) the insurer's waiver of the lapse.

On February 19, 1976, Dr. Steven H. Baker (the insured) purchased life insurance coverage from The Penn Mutual Life Insurance Company (Penn Mutual), appellee. The insured named his parents, P. M. and M. E. Baker (the Bakers), appellants, as beneficiaries of the policy. The policy premiums were payable annually beginning February 19, 1976. The insured defaulted on the 1979 premium. A notice of default and an offer of reinstatement expiring on

April 6, 1979 were sent to the insured and received by him. On March 30, 1979, after the end of the grace period for premiums in default and before any action was taken by the insured, he died in an accident.

On April 4, 1979 the Bakers called Teddi Satterfield, the office manager of the Roy Harpold, Jr. Agency (the Harpold Agency), to report their son's death. (The Harpold Agency is a general agent for Penn Mutual.) Ms. Satterfield ran a "status command" for the policy in question on the office computer terminal. The elicited data indicated that the grace period had past, that a claim had been filed the previous day, and that dividends had accrued to the insured. Ms. Satterfield called the death claims department of Penn Mutual and was informed that the agency of record, in Oklahoma, had reported the insured's death on April 3, 1979, and that she could release the death claim forms (which action Ms. Satterfield testified was not taken unless the claim was found to be valid). Ms. Satterfield was asked to and did inquire of the Bakers whether it would be acceptable to deduct the amount of the defaulted premium from the face amount of the policy and credit the amount of the earned dividends against the premium due. The Bakers agreed to such handling. The Bakers submitted the claim forms on April 5, 1979. Sometime in April, the Bakers also tendered the amount of the defaulted premium. On April 30, 1979, the Bakers were told their claim would be denied. The Bakers brought this suit to collect the policy proceeds. The court granted Penn Mutual's summary judgment motion.

■ The Bakers first contend that a fact issue existed on the question of whether Penn Mutual's possession of the insured's dividends prevented lapse of the policy. The dividends clause of the policy gives the insured several options for payment of the dividends earned under the policy. One option—dividend option "(2)"—is to have the dividends apply to reduce the premium due "if the remainder of such premium is paid." According to the Bakers, the availability of such an option coupled with the

existence of earned dividends payable to the insured creates a material fact issue as to whether the dividends were to be credited against the premium in default to prevent the policy from lapsing for non-payment of premiums. The insured's application to Penn Mutual for insurance was included in the summary judgment evidence. In the application he elected dividend option "(4)." Option "(4)" requires Penn Mutual to accumulate dividends earned and pay compound interest at the specified rate. No material issue of fact existed concerning the application of dividend option "(2);" such option was not elected by the insured.

■ The Bakers also contend that a fact issue existed as to whether the "Automatic Premium Loan" provision (the APL) prevented lapse. By the policy terms, the APL could not, under any circumstances, operate to prevent lapse until after the "Automatic Conversion Date" (the ACD). The policy specified that the ACD was February 19, 1981. Therefore, no fact issue concerning the operation of the APL was presented.

By their second point of error, the Bakers argue that a material issue of fact was presented concerning waiver or estoppel. Basically, they contend that by the acts and representations of Ms. Satterfield, the death claims department of Penn Mutual and other representatives of Penn Mutual, the insurance company waived the insured's failure to pay the premium and/or estopped itself from asserting lapse as a defense to liability under the policy. We will assume, without deciding, that Penn Mutual committed the acts and made the representations attributed by the Bakers to Ms. Satterfield, the Penn Mutual death claims department and others.

■ The contract lapsed and terminated by its terms and conditions when the grace period passed without payment of the defaulted premium. Through the NOTICE OF NON–PAYMENT OF PREMIUM, Penn Mutual extended an *offer* of reinstatement to the insured effective until April 6, 1979, subject to the express conditions of the offer. One condition on the offer was that late payments would have no effect after

the death of the insured. The offer did not operate to keep the policy in force after lapse; it only gave the insured an opportunity to reinstate coverage without penalty. The essential foundation of a life insurance policy is the life of a human being, *Gilbralter Colorado Life Co. v. Taylor,* 132 Tex. 328, 123 S.W.2d 318, 321 (1939). The doctrine of estoppel cannot be used to create a contract which terminated before the acts were committed. 16C Appleman, Insurance Law and Practice § 9259, at 386 (1959). On similar facts, an insurance company which issued proof of death forms and cashed a late payment check after the death of the insured—which check was tendered after the expiration of the late payment offer but before the insured's death—could not waive termination after death of the insured by such acts. *Allstate Insurance Co. v. Mooney,* 562 S.W.2d 950 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.). The facts here differ in that the death of the insured and Penn Mutual's purported acceptance of the claim occurred before the final date noted on the reinstatement offer (April 6, 1979). The difference is irrelevant. The *contract* terminated at the end of the grace period as a matter of law. The reinstatement offer terminated by its express terms when the insured died. Furthermore, the reinstatement offer was extended *to the insured.* After his death he could neither accept the offer nor authorize the Bakers to accept it for him. No waiver or estoppel could restore vitality to the contract after the subject matter of the contract, the insured, ceased to exist. Therefore, no liability could attach to Penn Mutual's actions as a matter of law.

The Bakers rely primarily on *Grand Lodge Colored Knights of Pythias of Texas v. Green,* 69 S.W.2d 149 (Tex.Civ.App.—Waco 1934), *writ dism'd w. o. j.,* 128 Tex. 593, 101 S.W.2d 219 (1937). The case is distinguishable on its facts. We do not consider it controlling. Therefore the judgment of the trial court is affirmed.

Affirmed.