**Linda D. MacINTIRE, Appellant,**

v.

**ARMED FORCES BENEFIT ASS'N and AFBA Life Insurance Co., Appellees.**

**No. 04–99–00892–CV.**

Court of Appeals of Texas, San Antonio.

June 30, 2000.

Jorge Vega, Thomas S. Harman, Elms Harmons,L.L.C., San Antonio, for appellant.

Jorge E. Canseco, Clemens & Spencer, P.C., San Antonio, for appellees.

Sitting: HARDBERGER, Chief Justice, LÓPEZ, and GREEN, Justices.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

This is an appeal following a trial court's grant of summary judgment. Linda D. MacIntire ("Linda") and Scott H. MacIntire, Jr ., ("Scott") submitted a joint application for life insurance to the Armed Forces Benefit Association ("AFBA").[1] The policy lapsed, Scott died, and then Linda sought payment of benefits under Scott's policy. AFBA denied Linda's request. Linda brought suit under several theories of recovery. AFBA moved for summary judgment, and the trial court granted AFBA's motion. Linda appeals. We affirm the trial court's order granting summary judgment.

### BACKGROUND

Linda and Scott submitted a joint application for term life insurance on their lives to AFBA in April 1996. Originally, it was intended to have quarterly premium payments deducted from one of their bank accounts under AFBA's "Checkmatic" program. For whatever reason, the automatic transfers never began. The Scotts made some premium payments directly to the company, but several were missed. In January 1997, Scott was diagnosed with a terminal illness. He died in August 1998.

Linda contacted AFBA in September 1998 to inquire "concerning the payment of insurance benefits ... as a consequence of" Scott's death. In October 1998, Linda submitted payment of the delinquent premiums (from March 31, 1998 until Scott's death) and requested payment under Scott's policy. AFBA did not accept these

---

1. We refer to the Armed Forces Benefit Association and the underwriter, AFBA Life Insurance Company, collectively as "AFBA." For clarity, we refer to the MacIntires by their first names.

premiums and denied payment of benefits. The company's position is that coverage on Scott's life terminated as of March 31, 1998 because of the MacIntires' failure to pay premiums after February 28, 1998.[2] Linda stated the only notification she received that the policy had been terminated was in September 1998, after her first inquiry.

Linda sued AFBA, seeking recovery of the death benefits, as well as damages, under several theories: Article 21.21 of the Texas Insurance Code, the Texas Deceptive Trade Practices Act (DTPA), breach of contract, negligence, breach of duty of good faith and fair dealing, breach of implied warranty, and ambiguity of contract. Linda later testified that she agreed the policy was not paid up at the time of Scott's death.

AFBA moved for summary judgment, stating that no genuine issue of material fact existed, and that AFBA was entitled to judgment as a matter of law. The trial court granted summary judgment.

On appeal, Linda raises six issues, each tied to a particular claim she raised in her pleadings. In each issue, she alleges that the trial court erred in granting AFBA's motion for summary judgment because there existed genuine issues of material fact concerning the elements of that claim: 1) breach of contract, 2) breach of implied warranty and ambiguity of contract, 3) DTPA violations, 4) Texas Insurance Code Article 21.21, 5) breach of duty of good faith and fair dealing, and 6) negligence.

AFBA argues there was no genuine issue of material fact concerning the lapse of the policy. AFBA argues further that Linda's claims "cannot stand in the absence of an underlying contract."

## DISCUSSION

### 1. Standard of Review

A defendant moving for summary judgment has the burden of establishing that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action and that the defendant is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

▬ In reviewing a summary judgment, we accept as true all evidence supporting the non-movant. *See Nixon*, 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in her favor. *See id.* Where, as here, the trial court does not state the grounds for granting the motion, and several grounds are provided, we must determine if any of the grounds would support the judgment. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### 2. Application

### a. Ambiguity of Contract (Contained in Issue Two) and Breach of Contract (Issue One)

In her third amended original petition, Linda argues that the following behavior amounts to a breach of contract by AFBA: 1) AFBA's failure to advise her if a default occurred, or if termination of the policy was imminent; 2) AFBA's failure to provide notice of the termination of the policy in accordance with "the statement within their policy provisions regarding notice of cancellation"; and 3) AFBA's denial of Linda's claim for death benefits.

▬ The elements in a suit for breach of contract are: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354–55 (Tex.App.—San Antonio 1998, pet. denied).

---

2. The grace period under the policy kept the policy in force for 31 days following the period through which the policy was paid.

The threshold question is whether a contract exists.

An insured's failure to pay premiums when they come due causes the insurance policy to lapse and become ineffective. *See Walker v. Federal Kemper Life Assurance Co.,* 828 S.W.2d 442, 447 (Tex.App.—San Antonio 1992, writ denied). When a grace period on a policy passes without payment of the defaulted premium, the policy lapses and terminates. *See P.M. Baker v. Penn Mutual Life Ins. Co. .,* 617 S.W.2d 814, 815 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

This court has held that an insurance company need not advise an insured that his policy has lapsed. *See Cantu v. Southern Life & Health Ins. Co.,* 360 S.W.2d 812, 813 (Tex.Civ.App.—San Antonio 1962, no writ). The *Cantu* court left open the possibility, however, that waiver or estoppel might prevent a lapse and keep the policy in force. *See id.* "Waiver by custom and estoppel are the same concept." *Blanton v. John Hancock Mut. Life Ins. Co.,* 345 F.Supp. 168, 170 (N.D.Tex.1971), *aff'd per curiam,* 463 F.2d 421 (5th Cir. 1972).

"[I]n *the absence of any agreement to that effect,*" waiver results "from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy or does acts based thereon." *See Equitable Life Assurance Society v. Ellis,* 105 Tex. 526, 536–37, 147 S.W. 1152, 1156 (1912) (emphasis added). An insurer's acceptance of premium payments "beyond the grace period does not constitute a waiver of the provisions of the forfeiture clause for nonpayment of premiums, and a company who accepts late premiums does not waive the forfeiture clause in any future situation." *Blanton,* 345 F.Supp. at 170 (citing *Great Southern Life*

*Insurance Company v. Peddy,* 139 Tex. 245, 162 S.W.2d 652 (1942)).

In *P.M. Baker,* the insured defaulted on his 1979 premium. *See P.M. Baker,* 617 S.W.2d at 814. The carrier sent a notice of default and an offer to reinstate the policy to the insured. *See id.* The offer expired on April 6, 1979. *See id.* at 815. The insured died on March 30, 1979, "after the end of the grace period for premiums in default and before any action was taken by the insured." *Id.* The court explained that the reinstatement offer did not keep the policy in force after the lapse; "it only gave the insured an opportunity to reinstate coverage without penalty." *Id.* at 816. When the insured died prior to the beneficiary's attempt to reinstate the policy, the doctrine of estoppel could not be used "to create a contract which terminated before the acts were committed." *Id.* Similarly, an insurance company that cashed a late payment check "after the expiration of the late payment offer but before the insured's death" could not waive termination by such acts *after* the insured died. *See Allstate Ins. Co. v. Mooney,* 562 S.W.2d 950 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.)).

In the present case, AFBA billed Linda[3] for joint coverage. During the life of the policy, there had been twenty months of delinquent payments prior to their final payment. The last premium received by AFBA[4] from the MacIntires (before Scott's death) was for $296.80 on April 22, which brought the policy current through February 28, 1998. The policy's coverage ended on March 31, 1998, which was the expiration of the 31–day grace period following the termination date of February 28, 1998. Linda concedes that the policy was delinquent as of the date of Scott's death.

---

**3.** The bills were apparently addressed to Linda because she was the "member" of AFBA; her husband was an associate member.

**4.** Linda attempted to send AFBA a payment for a portion of the delinquent premiums after Scott died, but AFBA refused the payment because the policy no longer existed and Scott was deceased.

The issue becomes whether, in spite of this delinquency, a contract was in force on the date of Scott's death. Under *P.M. Baker*, when the grace period ran with no further payment of premiums, the policy lapsed and expired. An insurance company cannot waive termination *after* the insured dies. *See P.M. Baker*, 617 S.W.2d at 815–16. Because no contract was in force when Scott died, no contract existed that AFBA can "revive." Because no contract exists that can be revived, there is no contract that can be breached by denying benefits to Linda after she received written notice of the policy's termination (even though Linda paid the delinquent premiums in October 1998 for the period from February 28, 1998 until Scott's death).

Linda alleges *also* that AFBA breached its contractual agreement with her by failing to notify her and Scott of the policy's termination. Scott's life insurance policy provided in part:

### TERMINATION OF INSURANCE

Insurance will terminate on the earliest of:

(1) the date the Insured terminates his/ her membership or associate membership in the Association;

(2) the date the Insured attains age 70;

(3) the date the premium is not paid in full for the period of coverage

No policy provision exists that placed a duty on AFBA to notify either Scott or Linda of the amount due or of its "imminent" termination. AFBA ultimately did send a written termination notice to Linda. Even though the notice was sent after Scott's death, Linda's attempt to "restore" the policy after Scott died fails as a matter of law.

Linda also argues that the "cancellation procedure" places contractual duties upon AFBA, even though it is a provision contained outside the insurance policy contract:

**CANCELLATION PROCEDURE:** If you fail to pay an installment or pay less than the amount required, we will include a delinquent message on your next statement. After that second statement, if no further payment is received to clear your account within thirty days the account will be terminated and we will issue a legal non-receipt of payment termination notice.

This language is not in the insurance policy but is on the back of the statements that AFBA sent to Linda. No evidence exists that Linda relied upon this provision to her detriment, which might arguably bring it into the fold of the parties' contract. The "cancellation procedure" does not specify when the time period for providing written notice of termination.

Linda and her late husband were on notice that the policy had been delinquent in the past. Copies of statements sent during the life of the policy indicate that AFBA had notified the MacIntires of the policy status. The pertinent language on the back of the statement continues:

Review your certificate of insurance under "Termination of Insurance" provisions and "Conversion Privilege" provisions. The conversion period, or "grace period" for Benefits for Death During Conversion Period is 31 days. Consequently, if a death occurs following the 31 day conversion period, and the account is delinquent, **no death benefit will be paid**.

Scott's death occurred after the 31–day period and the account was delinquent. AFBA did not breach a contractual provision, if there was one under the "cancellation procedure," when it denied benefits to Linda.

AFBA is not required to waive the policy's termination following Scott's death. The written notice, received by Linda in September 1998 (prior to the payment of the delinquent premiums in October 1998) was sufficient to terminate the policy. Scott died before Linda attempted to restore the policy by paying the delinquent

premiums. No contract existed that could be breached by AFBA in denying benefits.

The trial court properly granted summary judgment on the breach of contract and ambiguity of contract claims.

### b. Issue Two: Breach of Implied Warranty

■ Linda argues that AFBA "breached the implied warranty that services shall be performed in a good and workmanlike manner" when AFBA failed "to maintain accurate records, failed to contact the insured by phone or in person, to clarify the manner and method of payments, and failed to provide sufficient, adequate notice of default and termination, as well as describe the problems associated with any failure to complete the payment of premiums by electronic funds transfer."

■ The implied warranty for good and workmanlike performance may apply to services. *See Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp.*, 987 S.W.2d 50, 52–53 (Tex.1998). The *Rocky Mountain* court cautioned, however:

> To date, this Court has recognized an implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property.... An implied warranty that services will be performed in a good and workmanlike manner may arise under the common law when public policy mandates.... Public policy does not justify imposing an implied warranty for service transactions in the absence of a demonstrated, compelling need.... There is no compelling need for an implied warranty when other adequate remedies are available to the consumer....

*Rocky Mountain*, 987 S.W.2d at 53. The court continued by explaining when remedies are not adequate:

> Remedies may not be adequate when, for example, privity or reliance requirements or the difficulty of assigning responsibility prevent a wronged consumer from obtaining redress.... *Cf. Jacob E. Decker & Sons v. Capps*, 139 Tex. 609, 164 S.W.2d 828, 833–34 (Tex.1942) (imposing common-law implied warranty that food products introduced into the chain of commerce are fit for human consumption).

*Rocky Mountain*, 987 S.W.2d at 53. The court noted further that "[n]o such obstacles" were present in the case at bar. *See id.* (holding that Texas law does not recognize an implied warranty that services incidental to helicopter maintenance will be performed in a good and workmanlike manner).

We have not located any published case extending the implied warranty for good and workmanlike performance to the "service" provided by life insurance companies. In addition, an insured normally has recourse against a carrier under the Texas Insurance Code for unfair practices by the carrier. *See generally* TEX.INS.CODE ANN. art. 21.21 (Vernon 1981 & Supp.2000). We conclude that the trial court did not err in granting summary judgment on the implied warranty claim.

### c. Issue Five: Duty of Good Faith and Fair Dealing

Linda argues that AFBA's failure to comply with the notice of termination provision, as well as its denial of Linda's claim for death benefits under Scott's policy, is a breach of the duty of good faith and fair dealing.

The Texas Supreme Court has articulated a two-prong test to determine whether an insurer breaches the duty of good faith and fair dealing:

> An insurer has a duty to deal fairly and in good faith with its insured *in the processing and payment of claims.* ... A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there

was not a reasonable basis for denying the claim or delaying payment of the claim.

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex.1995) (citing *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988)).

The issue before us is whether "a reasonable insurer under similar circumstances would have ... denied the claimant's benefits." *Id.* Such a determination prevents holding AFBA liable for *erroneously* denying a claim, as long as a *reasonable basis* exists for denying the claim. *See id.* The duty of good faith and fair dealing applies only to AFBA's conduct regarding its determination of whether to pay the claim to Linda. *See id.*

Because AFBA did not breach a contractual duty to Linda by denying her claim for benefits, AFBA could not have, as a matter of law, acted in bad faith either. *See id.* at 341 (explaining that the general rule is that no claim for bad faith exists when an insurer denies a claim that is not covered). The remainder of AFBA's actions, which Linda contends amount to bad faith, do not comprise the duty of good faith and fair dealing. The trial court did not err in granting summary judgment as to the bad faith claim.

### d. Issue Three: Deceptive Trade Practices Act and Texas Insurance Code

Linda raises two general types of conduct that she regards as actionable under the DTPA and the Insurance Code: 1) the denial of benefits under the policy violates the DTPA and the Insurance Code; and 2) the billing errors amount to misrepresentations and that AFBA's failure to notify her of the policy termination is a breach of the policy. As to the Insurance Code, she complains of AFBA's failure to notify her of the change in underwriter.

We have stated that an insurer who proves it had a reasonable basis for denying a claim, even if the finder eventually determines that basis to be erroneous, enjoys immunity from statutory bad faith under the Texas Insurance Code and the Texas Deceptive Trade Practices Act. *See Saunders v. Commonwealth Lloyd's Ins. Co.*, 928 S.W.2d 322, 324 (Tex.App.—San Antonio 1996, no writ). We have also stated that "the mere breach of an insurance contract does not give rise to liability under the Insurance Code or DTPA." *Walker*, 828 S.W.2d at 454. Even if we were to find that the trial court erred in granting summary judgment as to the breach of contract issue, no Insurance Code or DTPA claim is permissible. *See Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex.1984).

Linda did not introduce evidence of damages beyond the denial of benefits. "Conduct prohibited by the Texas Insurance Code is actionable only if the plaintiff has sustained actual damages as a result of that conduct." *Walker*, 828 S.W.2d at 454; *see also* Tex.Ins.Code Ann. art 21.21 § 16(a). No injury is shown beyond "the injury that would always occur when an insured is not promptly paid [her] demand." *Id.* at 454. As a result, AFBA cannot, as a matter of law, be liable under the Insurance Code or the DTPA. *Id.*

Even if we were to conclude that the billing errors are misrepresentations, the evidence does not establish that these errors are a producing cause of Linda's failure to remain current on the premium payments. "Although the DTPA cause of action has the characteristics of strict liability, the courts have made it clear that the consumer, to be successful, must show that the defendant committed a deceptive act that factually caused the consumer's damages." Stephen G. Cochran, 27 Texas Practice § 1.7 at 16 (1996); *see* Tex.Bus. & Comm.Code Ann. § 17.50(a) (Vernon Supp. 2000). The Texas Supreme Court has held that the acts must be a "substantial factor" in causing the consumer's injuries. *See Brown v. Bank of Galveston*, 963 S.W.2d 511, 514 (Tex.1998). Although her brief indicates to the contrary, Linda did not

testify or produce evidence that she was mislead by the variations in billing amounts for Scott's policy. She was on notice that his premium would rise on his 50th birthday. The premium did increase, and perhaps the increase was higher than she anticipated. But, the substantial factor in the lapse of Scott's insurance policy was her failure to pay premiums altogether after March 31, 1998. If AFBA failed to notify her of the delinquency, such a failure could only amount to a breach of contract, which is not actionable under the DTPA. Because AFBA does not have a duty under Texas law to provide such notices to the insured, we decline to hold AFBA liable in light of Linda's failure to pay premiums.

AFBA's alleged violations of the Insurance Code must be a producing cause of her injuries as well. The relief that she seeks for Insurance Code violations is available under the DTPA. *See* TEX.INS. CODE ANN. Art. 21.21 § 16(a) (Vernon Supp.2000). She has not introduced evidence that AFBA's alleged actions prevented or hindered her from making timely premium payments. The trial court did not err in granting summary judgment as to the DTPA and Insurance Code claims.

### e. *Issue Six: Negligence*

AFBA may have failed to provide proper notices to Linda regarding the policy status. As Linda appears to concede in her brief, however, AFBA has no duty to provide notices regarding the policy. Even if the notices it provided were inaccurate, Linda has not established a causal link between the improper notices and her failure to maintain the policy. The trial court did not err in granting summary judgment as to the claim of negligence.

### CONCLUSION

We affirm the trial court's summary judgment.