**Reversed and Rendered and Opinion filed February 29, 2024.**



In The

# Fourteenth Court of Appeals

NO. 14-22-00863-CV
NO. 14-22-00872-CV
NO. 14-23-00013-CV

**EXXONMOBIL CORPORATION, Appellant**

**V.**

**JON ALVAREZ, ET AL.; CARLOS BURGOIN, ET AL.; AND EFRAIN FLORES-RODRIGUEZ, ET AL., Appellees**

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2019-52989**

## OPINION

In this permissive appeal, the question is whether a summary-judgment movant conclusively established its exclusive-remedy defense under the Texas Workers' Compensation Act. Our answer is "yes."

# I.     BACKGROUND

This is a personal injury case, arising out of a fire and explosion at ExxonMobil's Baytown Olefins Plant in 2019. The Plaintiffs are twenty-three individuals,[1] each of whom had been working at the plant as an employee of one of four subcontractors: Brock Services, LLC; Jacobs Field Services North America, Inc.; Wood Group USA, Inc.; and BrandSafway, LLC. ExxonMobil moved for summary judgment in a series of three motions, all of them on the basis of the exclusive-remedy defense under the Texas Workers' Compensation Act (the "Act"). The trial court denied each of ExxonMobil's motions but allowed ExxonMobil to seek a permissive appeal, which we accepted.

## II.     THE EXCLUSIVE-REMEDY DEFENSE

The Act provides reciprocal benefits to covered employees and their subscribing employers. For the covered employee who sustains a work-related injury, the Act guarantees the prompt payment of medical bills and lost wages, without regard to who was at fault for causing the injury. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 350 (Tex. 2009). For the subscribing employer, the Act provides a defense to the injured employee's common law claims. *Id.* This defense provides in material part that "recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . for . . . a work-related injury sustained by the employee." *See* Tex. Lab. Code § 408.001(a).

---

[1] In Cause No. 14-22-00863-CV, the Plaintiffs consist of Jon Alvarez, Chiquita Bland, Jorge Elizondo, Pedro Garcia, Rodolfo Garza, Luis Gutierrez, Leobardo Morfin, Martin Rodriguez, and Dennis Woods. In Cause No. 14-22-00872-CV, the Plaintiffs consist of Carlos Burgoin, Alvaro Coronel, Josue Munoz, Elizabeth Murphy, Roberto Pena, Proculo Perez, Alex Raudez, Kassandra Rodriguez, Raul Rosales, Michael Salgado, Riggie Speights, Arturo Torres, and John Torres. In Cause No. 14-23-00013-CV, the Plaintiffs consist of Efrain Flores-Rodriguez, Felipe Lopez, and Fidencio Rojas.

To establish the exclusive-remedy defense, and therefore defeat a common law claim for personal injury damages, the defendant must show that (1) the defendant was the plaintiff's employer within the meaning of the Act, and (2) the defendant subscribed to workers' compensation insurance. *See Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012).

ExxonMobil was not the actual employer of any of the Plaintiffs. Instead, ExxonMobil was a general contractor, and the Plaintiffs were the employees of four separate subcontractors. But for purposes of the Act, a general contractor may be deemed the employer of the employees of a subcontractor if there is "a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *See* Tex. Lab. Code § 406.123(a), (e).

Thus, to establish the exclusive-remedy defense, ExxonMobil had to prove the existence of such an agreement, and that coverage was provided to the Plaintiffs.

Because it was the moving party below, ExxonMobil had the initial burden of showing that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on its exclusive-remedy defense. *See* Tex. R. Civ. P. 166a(c). If ExxonMobil proved that defense, then the burden shifted to the Plaintiffs to raise a fact issue or otherwise show that summary judgment was improper. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000) (per curiam). When deciding whether the parties met these respective burdens, we consider the trial court's ruling de novo, and we review all of the evidence in the light most favorable to the Plaintiffs because they are the nonmovants. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

3

## III.    BROCK SERVICES, LLC

We begin with the set of Plaintiffs employed by Brock Services, LLC. Some of these Plaintiffs are represented in the trial court by the law firm of Arnold & Itkin, and the rest are represented in the trial court by the law firm of Abraham Watkins. ExxonMobil's arguments apply to all such Plaintiffs equally, but the law firms sometimes advance different legal arguments. Where appropriate, we address those arguments separately.

### A.    ExxonMobil's Evidence

We start with the first element—i.e., whether there is "a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor." *See* Tex. Lab. Code § 406.123(a).

ExxonMobil proved the existence of such an agreement. Among its summary-judgment evidence, ExxonMobil showed that it had entered into a Standard Procurement Agreement ("SPA") with Brock. Under the terms of the SPA, Brock was the "Supplier," ExxonMobil was an "Affiliate," and any Affiliate that issued a purchase order was a "Purchaser." The SPA further stated: "Purchaser may furnish workers compensation insurance for Services performed by Supplier at the covered sites." Though worded permissively, this provision satisfies the written-agreement requirement under the Act, which means that ExxonMobil can be deemed the Plaintiffs' statutory employer. *See Lazo v. Exxon Mobil Corp.*, No. 14-06-00644-CV, 2009 WL 1311801, at *2 (Tex. App.—Houston [14th Dist.] May 7, 2009, no pet.) (holding that ExxonMobil was a general contractor and had proved the existence of a qualifying agreement under the Act because the agreement said that ExxonMobil "could provide workers' compensation insurance for [a subcontractor's] employees").

4

As for the second element—i.e., whether ExxonMobil subscribed to workers' compensation insurance—there was evidence that ExxonMobil had provided the Plaintiffs with coverage. This evidence included an email from Willis Towers Watson, ExxonMobil's insurance agent, which notified Brock of its enrollment in the "ExxonMobil OCIP – Owner Controlled Insurance Program." And attached to that email was a copy of the insurance policy from Chubb, the insurance carrier. The policy provided that Brock was the named insured, and that Brock was covered through all of 2019, including the date of the fire and explosion. The policy also named ExxonMobil's Baytown Olefins Plant as one of the covered sites. This evidence conclusively established that ExxonMobil provided coverage to the Plaintiffs.

Based on the foregoing, we conclude that ExxonMobil satisfied its burden of showing that it was entitled to judgment as a matter of law on its exclusive-remedy defense. The burden accordingly shifted to the Plaintiffs to raise a fact issue or otherwise show that summary judgment was improper.

## B. The Response from the Arnold & Itkin Plaintiffs

We begin with the response from the Plaintiffs represented by Arnold & Itkin, who have asserted many counterarguments.

The Plaintiffs focus first on the timing of certain documents, such as the SPA that ExxonMobil attached to its motion for summary judgment, which has an execution date of June 25, 2019 (shortly before the fire and explosion). The Plaintiffs then point to the insurance documents that ExxonMobil also provided, which were dated several months before the SPA. Based on that temporal discrepancy, the Plaintiffs argue that ExxonMobil did not conclusively prove that the SPA was the written agreement under which workers' compensation coverage was provided.

ExxonMobil responds that the SPA was a renewal. There is testimonial evidence that the parties often renewed SPAs, along with their corresponding insurance policies, although ExxonMobil did not produce a copy of any previous SPA it had with Brock.

In any event, there is nothing in the Act that conditions the exclusive-remedy defense on a particular sequence of documentation. Instead, the Act merely requires a written agreement that provides for workers' compensation insurance coverage. *See* Tex. Lab. Code § 406.123(a). ExxonMobil proved the existence of such an agreement.

We also observe that the purpose of the Act has always been to provide coverage. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 356 (Tex. 2009) ("First, the 'object sought to be attained' has always been simple: to ensure coverage of subcontractors and their employees."). That purpose would not be advanced if an employer who has already provided coverage had to cancel a preexisting policy and then renew it again every time the employer executed a new written agreement that authorized the provision of coverage. We therefore reject the Plaintiffs' argument that ExxonMobil's proof was insufficient.

The Plaintiffs also focus on a different type of discrepancy in the documents. They first note that the SPA provided by ExxonMobil has a contract number of A4004070. The Plaintiffs then point out that other secondary documents in the summary-judgment record contain references to a different contract number, A2251371. That other number appears on a payroll reporting form, on an email from ExxonMobil's insurance agent, as well as on certain purchase orders. That same number also appears on a certificate of liability insurance, following (not preceding) a clause stating that "this policy ONLY provides coverage for enrolled contractors for all work conducted under the contract number listed above at the ExxonMobil

6

Corporation OCIP project sites." The Plaintiffs argue that these discrepancies are material because there is no corresponding written agreement for the provision of workers' compensation insurance bearing the number A2251371.

The Plaintiffs' arguments fail for at least two reasons. First, the exclusive-remedy defense does not depend on proof of any of these secondary documents. Instead, the defense depends on proof of a written agreement and on proof of coverage, both of which ExxonMobil supplied. Second, all of these other documents predate the SPA, and there was testimonial evidence from Amanda Schoggin, who oversees ExxonMobil's workers' compensation program, that contract numbers periodically change when the policies are renewed. To whatever extent there is a fact issue regarding the different contract numbers, that fact issue is not material. *Cf. Germany v. Wells Fargo Bank, NA*, No. 14-17-00916-CV, 2019 WL 470256, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2019, pet. denied) (mem. op.) (recognizing that financial institutions occasionally change credit card account numbers, and holding that a discrepancy in such numbers did not preclude a summary judgment).

The Plaintiffs relatedly argue that some of the purchase orders refer to Brock Services, Ltd., when the correct entity is Brock Services, LLC. This discrepancy is not material either. As stated above, the exclusive-remedy defense does not depend on any proof of purchase orders. There is still uncontroverted evidence of a written agreement between ExxonMobil and Brock Services, LLC, as well as insurance coverage for Brock Services, LLC.

The Plaintiffs argue that the opposite conclusion is required by *Olivares v. Chevron Phillips Chemical Co.*, No. 05-22-00057-CV, 2023 WL 2494533 (Tex. App.—Dallas Mar. 14, 2023, no pet.) (mem. op.), but that case is distinguishable on the facts. The court there did not hold that a discrepancy in purchase orders precluded a summary judgment. Rather, the court held that the defendant had failed to

7

conclusively prove the existence of a qualifying written agreement because the agreement that had been produced was between the defendant and a parent company, instead of the plaintiff's actual employer. *Id.* at \*2 ("Chevron failed to produce any written agreement with Apache Global by which Chevron was to provide OCIP coverage. Instead, Chevron produced a contract and an application form that were signed not by Olivares's actual employer Apache Global, but by its parent company Apache Industrial.").

Returning to the written agreement that ExxonMobil actually produced, the Plaintiffs observe that the SPA merely provides for the option to provide coverage, rather than mandating such coverage. To whatever extent that the Plaintiffs suggest that this permissive language is insufficient, two courts—including ours—have already held otherwise. *See Lazo*, 2009 WL 1311801, at \*2; *Powell v. Valero Energy Corp.*, No. 13-18-00209-CV, 2019 WL 961958, at \*4 (Tex. App.—Corpus Christi Feb. 28, 2019, pet. denied) (mem. op.).

The Plaintiffs also observe that, under the remaining terms of the SPA, ExxonMobil is required to provide notice of any election and to reduce Brock's compensation by an amount equal to Brock's savings in workers' compensation insurance costs. The Plaintiffs then argue that ExxonMobil provided no evidence that it made an election, or that it provided notice and reduced Brock's compensation.

We disagree with both arguments. The insurance policy—which states that coverage is being provided as part of ExxonMobil's controlled insurance program—proves that ExxonMobil made an election, even though the policy predates the SPA in the record. And as for the remaining points, the exclusive-remedy defense does not depend on any proof of notice or compensation reductions.

8

The Plaintiffs focus next on a part of the policy that provides coverage to "the group of employees described in the Schedule." The Schedule then states that the employees must have executed a written agreement with the named insured—i.e., with Brock—to provide workers' compensation insurance at the designated premises. The Plaintiffs argue that ExxonMobil is not entitled to summary judgment because it provided no evidence of some other agreement between Brock and its employees.

Again, no such evidence is needed to establish the exclusive-remedy defense. And the policy excerpts cited by the Plaintiffs apply to the provision for employer's liability insurance, not workers' compensation insurance. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655–56 (Tex. 2008) (recognizing that these two types of insurance are different).

The Plaintiffs finally refer to affidavit testimony that certain individuals have already received workers' compensation benefits arising out of the fire and explosion. The Plaintiffs emphasize that the named individuals are exclusively represented by Abraham Watkins, and that there is no evidence that any of the individuals represented by Arnold & Itkin have similarly received benefits. Drawing on that discrepancy, the Plaintiffs argue that there is a fact issue as to coverage.

We disagree. ExxonMobil was not required to prove that any of the Plaintiffs had already received benefits. And the evidence that some of the Plaintiffs may have received such benefits does not negate the evidence that all of the Plaintiffs had workers' compensation insurance coverage.

C. **The Response from the Abraham Watkins Plaintiffs**

The Plaintiffs here make virtually the same complaints as in the preceding section.

For instance, the Plaintiffs similarly argue that the SPA is insufficient because it does not expressly create an OCIP, nor does it obligate ExxonMobil to purchase workers' compensation insurance. These argument have no merit. There is uncontroverted evidence of an OCIP, and that Brock is covered by it. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 359 n.4 (Tex. 2009) ("We look at what did happen, not what might happen.").

In highlighting another discrepancy, the Plaintiffs point out that an enrollment form contains a reference for contract number A2140204, which is different from both the number on the SPA (A4004070) and the number on the other set of documents discussed above (A2251371). This argument fails for the same reason above—the enrollment form is dated from 2010, and it does not negate the existence of the SPA, which was executed nine years later.

During oral argument, the Plaintiffs argued that the contract numbers were significant because coverage was determined on a job-by-job or contract-by-contract basis. The Plaintiffs did not support this argument with any language from the policy itself. Rather, the Plaintiffs referred to the deposition testimony of ExxonMobil's insurance broker, who said that ExxonMobil has the right to determine whether "this contract this scope of work at this location is going to be into the OCIP program."

ExxonMobil responded that coverage was determined by location (which was also referenced in the broker's testimony). That response is firmly rooted in the policy language, which provides, "This policy covers operations conducted at the workplace defined in the Designated Workplace Exclusion" (which includes the Baytown Olefins Plant). There is no policy restriction based on particular jobs or particular contracts at a covered location. The Plaintiffs' argument to the contrary lacks merit.

10

## IV.    JACOBS FIELD SERVICES NORTH AMERICA, INC.

### A.    ExxonMobil's Evidence

ExxonMobil entered into an SPA with Jacobs, but its wording was slightly different from ExxonMobil's agreement with Brock. This SPA requires Jacobs, as the "Supplier," to carry workers' compensation insurance for all of its employees, but the SPA also authorizes ExxonMobil, as the "Purchaser," to furnish that coverage instead. The authorizing language states as follows: "As an alternative and at Purchaser's option and expense, Purchaser may elect to furnish or arrange for Supplier all or any part of the insurance required in this Section."

The SPA was executed in 2010 and set to expire in 2015, but it was renewed by agreement, and the amended term covered the date of the fire and explosion in 2019. This evidence conclusively established the written-agreement requirement for ExxonMobil's exclusive-remedy defense.

As for the coverage requirement, ExxonMobil produced an email from its insurance agent to Jacobs, which evidenced Jacobs's renewal in the ExxonMobil OCIP. The email contains a copy of the insurance policy, which provides that Jacobs is the named insured, that the policy period runs through all of 2019 (including the date of the fire and explosion), and that coverage extends to work performed at ExxonMobil's Baytown Olefins Plant.

As to the Plaintiffs employed by Jacobs, this evidence established ExxonMobil's exclusive-remedy defense as a matter of law.

### B.    The Response from the Plaintiffs

The Plaintiffs argue that there is a fact issue as to whether ExxonMobil can be a Purchaser under the SPA, and thus, whether ExxonMobil has a written agreement

that provides for workers' compensation insurance. Their argument hinges on the blurry text of the SPA, which we reproduce here:

4. *Purpose and Operation.* *The Agreement consists of the Enabling Articles, the General Terms and Conditions, and the attached Exhibits and Addenda. The purpose of the Agreement is to provide terms and conditions to be incorporated into orders that may be issued by Affiliates (as defined in Section 1 of the General Terms and Conditions)in the United States to request Services from Supplier ("Orders"). Each Order will incorporate the terms of the General Terms and Conditions and the designated Exhibits and Addenda. The Affiliate that issues an Order ("Purchaser") is solely responsible for performance of Purchaser's obligations under such Order. Company shall not be responsible for obligations under any Order except any Order issued by Company designating itself as Purchaser. Each Order will constitute a legal contract between Purchaser and Supplier, separate and distinct from any other Order or this Agreement.* *For purposes of this Agreement only,Golden Pass LNG Terminal LLC and Golden Pass Pipeline LLC are authorized to place Orders and shall be treated as a Purchaser for all purposes.*

The Plaintiffs construe the underlined portion of this text as saying that Golden Pass LNG Terminal LLC and Golden Pass Pipeline LLC are the "only" entities authorized to place purchase orders and be treated as Purchasers under the SPA—which, if true, would mean that ExxonMobil could not be a Purchaser and could not elect to provide workers' compensation insurance coverage for the employees of Jacobs. The Plaintiffs' argument depends on the absence of a comma between "only" and "Golden Pass." But there is clearly a comma. And the SPA would make little sense if ExxonMobil—an actual signatory to the contract—could not be a Purchaser. Indeed, the record contains purchase orders from ExxonMobil, demonstrating that it was a Purchaser under the SPA.

In a separate argument, the Plaintiffs focus on discrepancies in contract numbers. They note that the SPA bears the contract number A2263391, whereas other documents, including a payroll reporting form and an "extension of information" page in the insurance policy, mention the number A2100164. ExxonMobil never produced an SPA with that latter number, and in the absence of such an agreement, the Plaintiffs believe that this discrepancy creates a fact issue.

We have already rejected a similar argument before. The other documents are not required to prove the exclusive-remedy defense, and their mention of different numbers does not negate the existence of the SPA or ExxonMobil's proof of coverage.

The Plaintiffs repeat another argument that was made with regard to the Brock employees. They point out that under the terms of the SPA, if ExxonMobil elects to provide coverage to Jacobs, then ExxonMobil must notify Jacobs and reduce Jacobs's compensation. The Plaintiffs then claim that ExxonMobil produced no evidence of such notice and compensation reduction. But these are not elements of the exclusive-remedy defense.

The Plaintiffs also believe that ExxonMobil could not claim the exclusive-remedy defense unless Jacobs had a written agreement with its own employees to provide for workers' compensation insurance. But this argument—which is also similar to a point made with respect to the Brock employees—is based on a part of the policy that concerns employer's liability insurance, not workers' compensation insurance.

## V. WOOD GROUP USA, INC.

There are two sets of Plaintiffs employed by Wood, each represented by a different law firm. As before, ExxonMobil's evidence applies to both sets equally. The law firms' arguments are often overlapping, but because they vary in some respects, we address them separately.

### A. ExxonMobil's Evidence

ExxonMobil did not produce any evidence that it had entered into an SPA with Wood. Instead, ExxonMobil produced evidence that it had entered into an SPA with Wood's predecessor, Infinity Maintenance Services L.P. That SPA was effective from 2016 through 2021, which encompassed the date of the fire and explosion.

ExxonMobil produced a copy of the certificate of merger, which established that Infinity had merged with Wood in 2017, nearly two years before the fire and

13

explosion. The certificate also established that Infinity did not survive the merger, and that Wood absorbed all of Infinity's assets and liabilities.

After the merger, in 2018, ExxonMobil's insurance agent sent an email to Wood, which contained an extension certificate of insurance, expiring in 2019. This email contains a reference to contract number A2498681, which is the same number as the SPA between ExxonMobil and Infinity.

Later in 2019, and before the fire and explosion, ExxonMobil's insurance agent emailed Wood again, with a workers' compensation policy that had been renewed until 2020. This policy specifically identifies Wood as the named insured. It also covers workplace conduct arising out of ExxonMobil's Baytown Olefins Plant.

All of this evidence demonstrates the existence of a written agreement to provide insurance, and the actual coverage of Wood's employees.

## B. The Response from the Arnold & Itkin Plaintiffs

The Plaintiffs argue that summary judgment is precluded simply because ExxonMobil never produced an SPA with Wood. But ExxonMobil did produce a copy of Infinity's merger with Wood. And "when a merger takes effect, all rights, title, and interest to all property vests in the surviving entity without further act or deed, and without any transfer or assignment having occurred." *See Comerica Bank v. Progressive Trade Enters., Inc.*, 544 S.W.3d 459, 465 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing Tex. Bus. Org. Code § 10.008(a)(2)). Thus, there was no need for ExxonMobil to produce a separate SPA with Wood.

The Plaintiffs again cite to *Olivares* for the claim that Wood cannot be added by implication to the Infinity SPA. But *Olivares* did not involve a merger. Instead,

14

it involved a parent company and a subsidiary, which the court determined must be treated as separate entities. *See Olivares*, 2023 WL 2494533, at *3.

The Plaintiffs alternatively argue that summary judgment is defeated by the terms of the merger itself. They point to the paragraph entitled "No Third Party Beneficiaries," which contains the following text: "Nothing in this Agreement, express or implied, is intended or is to be construed to confer upon or give to any person or entity, other than the Constituent Entities or their respective successors and assigns, any rights, remedies, obligations or liabilities under, or by reason of, this Agreement."

The Plaintiffs do not explain how this paragraph defeats ExxonMobil's summary judgment. Wood is not a third party beneficiary to the merger. Under the terms of the merger, Wood is included as one of the "Constituent Entities." This paragraph cannot be construed as saying that Wood was not conferred with any rights, remedies, obligations, or liabilities.

The Plaintiffs point to another paragraph in the merger, which requires Infinity to make "further conveyances, agreements, documents, instruments, assurances or any other actions" that Wood considers necessary. The Plaintiffs seem to believe that some sort of action should have occurred under this paragraph, but they do not explain what that action should have been. To whatever extent that they suggest that Infinity should have insisted on ExxonMobil entering into a new SPA with Wood, the argument must fail because ExxonMobil is not obligated to perform under this merger.

The Plaintiffs also suggest that if the Infinity SPA applied, then ExxonMobil needed to prove that it gave notice of its election, and that it reduced Wood's compensation by the cost of the workers' compensation insurance, as required by the SPA. This argument has been asserted before with respect to a different set of

15

Plaintiffs, and it must fail here too because the exclusive-remedy defense does not require such proof.

The Plaintiffs relatedly suggest that ExxonMobil is not entitled to summary judgment because its failure to provide notice violated the Texas Administrative Code. *See* 28 Tex. Admin. Code § 112.101(e) (providing that a general contractor must notify the employees of a subcontractor when an agreement has been made to provide the latter with workers' compensation insurance coverage). This argument has already been rejected by our sister court. *See Becon Constr. Co. v. Alonso*, 444 S.W.3d 824, 833 (Tex. App.—Beaumont 2014, pet. denied) ("Neither the Act nor the regulations governing contractor-controlled insurance programs in the Administrative Code describe the penalty for violating the administrative rules at issue. Given the Legislature's 'decided bias in favor of employers electing to provide coverage' through a policy 'that encourages the provision of workers' compensation coverage to all workers on a given work site,' the Act should not be interpreted in the manner the employees argue."). The Plaintiffs provide no case authority showing that we should rule any differently.

The Plaintiffs also repeat the argument that Wood, as the named insured, must have had an agreement with its employees under the terms of the policy. But as before, the Plaintiffs are referring to a portion of the policy that governs employer's liability insurance, not workers' compensation insurance.

## C.     The Response from the Abraham Watkins Plaintiffs

The Plaintiffs begin by repeating the argument that there is no SPA executed by Wood. There is only an SPA executed by Infinity, and the Plaintiffs suggest that this SPA is problematic for ExxonMobil because the SPA does not mandate coverage; rather, it merely permits coverage. These points do not defeat

16

ExxonMobil's entitlement to summary judgment because ExxonMobil still produced a copy of the merger, as well as proof that it elected coverage.

The Plaintiffs argue that the merger clause in the SPA "disclaims any assignment of coverage to Wood." But that clause simply provides that amendments must be in writing. It says nothing about workers' compensation coverage.

The Plaintiffs criticize the emails from ExxonMobil's insurance agent, arguing in their brief that "these emails do not reference the OCIP policy or insurance agreement, which would dictate the terms of the coverage." These complaints are factually untrue. There is one email that references the OCIP policy, and even includes a copy of the policy as an attachment. The "terms of the coverage" are contained within that policy. Insofar as the Plaintiffs suggest that the emails should have referred to the SPA as well, that complaint is unavailing as well because that too was referenced in an email from ExxonMobil's insurance agent. Both the subject line and the body of the email even reference the contract number of the Infinity SPA (A2498681).

The Plaintiffs argue next that there is no evidence of an actual, rather than conditional OCIP. But as just stated, ExxonMobil provided a copy of the policy through its insurance agent.

The Plaintiffs assert that there is no evidence that ExxonMobil "deducted premiums allegedly paid on behalf of the Wood Group employees." But ExxonMobil did not have this burden, and the Plaintiffs have supplied no authority to the contrary.

The Plaintiffs complain next that the policy does not contain a reference to contract number A2498681, which appeared in the Infinity SPA. But the Plaintiffs

have not cited to any authority that the contract number must appear in the policy. That policy was written by Chubb, which is not even a party to the SPA.

The Plaintiffs lastly complain that there is a discrepancy in the documents. Whereas the SPA is identified by contract number A2498681, there is an enrollment form in the record bearing the number A2211847. As before, this discrepancy is not material. The exclusive-remedy defense does not depend on any proof of an enrollment form. And besides, the cited enrollment form is from 2010, which predates the Infinity SPA by six years (and the merger by seven years).

The Plaintiffs have not shown that there is a fact issue precluding a summary judgment.

## VI.   BRANDSAFWAY, LLC

### A.   ExxonMobil's Evidence

ExxonMobil entered into an SPA with Brand Energy and Infrastructure Services, Inc ("BEIS"). Like the other SPAs, this agreement permits, but does not require, ExxonMobil to provide workers' compensation insurance. The SPA has a contract number of A2544347.

Two years after entering into the SPA, the parties amended the agreement to reflect that BEIS had merged with another entity; that the new name for the combined company was Brand Industrial Services, Inc.; and that its primary "go-to-market name" was BrandSafway. The amendment also expanded the definition of "Supplier" to encompass Brand Industrial Services, Inc., and any entity that it controls. The amendment referenced the same contract number as the original SPA (A2544347).

ExxonMobil's insurance agent sent an email in 2018 directed to Brand Industrial Services, LLC (not "Inc."—which had been used in the amended SPA),

18

notifying that entity that its certificate of insurance had been extended to 2019. Then in 2019, the agent sent another email with a copy of the workers' compensation insurance policy, effective through 2020.

The policy identified Brand Industrial Services, LLC as the named insured. But in 2022, more than two years after the fire and explosion, Chubb issued an endorsement to amend the insured's name to Brand Industrial Services, Inc. This change—which brought the named insured into alignment with the amended SPA—was made effective for all of 2019, thereby covering the time of the fire and explosion.

The Plaintiffs did not work for Brand Industrial Services, Inc. They worked for BrandSafway, LLC, which is a subsidiary of Brand Industrial Services, Inc. But ExxonMobil still produced evidence that BrandSafway, LLC was covered under the policy. This evidence included the endorsement from Chubb, which contained a "full schedule" of the "named insured history," and on that schedule appeared the name "BrandSafway," alongside an FEIN, or federal employer identification number. The schedule did not identify the organizational type of this entity—e.g., whether it was a corporation or limited liability company—but there was deposition testimony that the FEIN belonged to BrandSafway, LLC. The endorsement also remarked that this entity was deemed to have been added to the policy at the beginning of 2019, before the fire and explosion.

Altogether, this evidence conclusively established that ExxonMobil entered into a written agreement to provide for workers' compensation insurance to Brand Industrial Services, Inc. and every entity that it controlled (including the subsidiary BrandSafway, LLC), and that ExxonMobil actually provided workers' compensation insurance coverage to BrandSafway, LLC.

## B.    The Response from the Plaintiffs

The Plaintiffs focus on the complicated facts of the insurance policy. They first observe that the original named insured—Brand Industrial Services, LLC— never even existed. The Plaintiffs recognize that, after the fire and explosion, Chubb amended the named insured to Brand Industrial Services, Inc.—which had existed at some point—but the Plaintiffs emphasize that this entity's corporate existence had terminated several decades earlier in a merger with Brand Environmental Services, Inc. The Plaintiffs then complain that this latter entity was not listed in the "named insured history" on the Chubb endorsement.

None of these facts defeats ExxonMobil's entitlement to summary judgment. The endorsement includes BrandSafway, LLC, the Plaintiffs' actual employer, which means that ExxonMobil conclusively established that it provided coverage.

## VII.   REMAINING ARGUMENTS

The Plaintiffs make several other arguments, which are not specifically tied to any particular subcontractor.

They first argue that ExxonMobil is not entitled to summary judgment because it never proved that it paid premiums due under the policy. This argument lacks merit under *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238 (Tex. 2012), which held that "premiums are an issue between the employer and the insurer; they do not affect the employee's coverage." *Id.* at 243. The Plaintiffs suggest that *Casados* was wrongly decided, and that we should instead follow *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85 (Tex. App.—San Antonio 2000, no pet.), which held that "an insured's failure to pay premiums when they come due causes the insurance policy to lapse and become ineffective." *Id.* at 89. But we are bound to follow *Casados*, as it was decided by a higher court, and *MacIntire* is further

20

distinguishable on the ground that it did not involve workers' compensation insurance.

The Plaintiffs also argue that ExxonMobil waived its exclusive-remedy defense, based on a provision in each SPA stating that the employees of the subcontractors may not "participate in or receive benefits from any employee benefit plan sponsored by Exxon Mobil Corporation or any of its affiliated companies." This argument lacks merit for at least two reasons. First, workers' compensation is not an employee benefit plan. The phrase "employee benefit plan" relates to the Employee Retirement Income Security Act, which excludes workers' compensation plans. *See* 29 U.S.C. § 1003(b)(3). And second, if this paragraph applied to workers' compensation benefits, then it would conflict with a subsequent paragraph within the SPA that expressly allows ExxonMobil to provide workers' compensation insurance coverage. We must construe the SPA to avoid that conflict. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) (stating that when interpreting a contract, a court should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless").

## VIII. CONCLUSION

We conclude that ExxonMobil conclusively established both elements of its exclusive-remedy defense as to each of the Plaintiffs, and that the Plaintiffs failed to raise a fact issue or otherwise show that summary-judgment was improper. In light of this conclusion, we need not consider the parties' remaining arguments, which concern the trial court's exclusion of certain evidence. *See* Tex. R. App. P. 47.1.

The trial court's orders denying ExxonMobil's motions for summary judgment are reversed, and judgment is rendered that the Plaintiffs take nothing by their claims against ExxonMobil.

21

/s/    Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Bourliot.